758 A.2d 1168

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellant,**

v.

**BETHENERGY MINES, INC., Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 2000.

Decided Sept. 29, 2000.

George Jugovic, Pittsburgh, for Com., Dept. of Environmental Protection.

Henry C. Ingram, Robert B. Hoffman, Harrisburg, for Bethenergy Mines, Inc.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

The issue presented in this appeal is whether Subsection 5(g) of the Bituminous Mine Subsidence and Land Conservation Act (Mine Subsidence Act), 52 P.S. § 1406.5(g),[1] empowers the Environmental Hearing Board (Board) to award attorney's fees and costs to a party that successfully defends an

---

1. Subsection 5(g) provides:

   § 1406.5. Permit; application; map or plan; bond or other security; filing; general rulemaking authority; prevention of damage; mine stability; maintenance of use and value of lands

   . . .

   (g) Public notice of every application for a permit or bond release under this act shall be given by notice published in a newspaper of general circulation, published in the locality where the permit is applied for, once a week for four consecutive weeks. The department shall prescribe such requirements regarding public notice and public hearings on permit applications and bond releases as it deems appropriate. For the purposes of these public hearings, the department shall have the authority and is hereby empowered to administer oaths, subpoena witnesses, or written or printed materials, compel the attendance of witnesses, or production of witnesses, or production of materials, and take evidence including but not limited to inspections of the land proposed to be affected and other operations carried on by the applicant in the general vicinity. Any person having an interest which is or may be adversely affected by any action of the department under this section may proceed to lodge an appeal with the Environmental Hearing Board in the manner provided by law, and from the adjudication of said board such person may further appeal as provided by Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure). *The Environmental Hearing Board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines have been reasonably incurred by such party [in] proceedings pursuant to this section.*
   52 P.S. § 1406.5(g) (emphasis added).

enforcement action of the Department of Environmental Protection (DEP). Because this Court finds that the Board has no such authority, we reverse the decision of the Commonwealth Court, which affirmed the Board's award of $552,500.00 in attorney's fees and costs to Bethenergy Mines, Inc. (Bethenergy).[2]

## I.  FACTS AND PROCEDURAL HISTORY

Bethenergy owned and operated an underground bituminous coal mine in Cambria County known as Cambria Mine 33.  Pursuant to a permit issued in June of 1987, which succeeded permits issued for the site in 1966 and 1972, DEP authorized Bethenergy to conduct longwall mining[3] at Cambria Mine 33.  The mining activities at the Cambria site encompassed an area in the Upper and Lower Kittaning coal seams beneath the watersheds of Roaring Run, Howells Run and the North Branch of the Little Conemaugh River.

A resident of the Roaring Run area complained to DEP in July of 1983 that Bethenergy's mining activities had resulted in a loss of water flow in the Roaring Run watershed.  In response, DEP sent a hydrogeologist and a geologist trainee to investigate the Roaring Run watershed to determine whether there was any correlation between Bethenergy's mining activities and the complained of flow loss.  While DEP was unable to draw any conclusions from this initial investigation, it followed up by sending a surface mining inspector to study the area in August of 1985.  The surface mining inspector observed that various portions of Roaring Run were dry.

In November of 1985, the same resident filed a complaint with the United States Office of Surface Mining regarding the

---

2.  Bethenergy, which also has the acceptable spelling of BethEnergy Mines, Inc., is a subsidiary of Bethlehem Steel Corporation of Bethlehem, Pennsylvania.

3.  "Longwall system" is defined as "a method of coal mining in which the working face extends entirely across the seem, the work proceeds either way from or toward the main shaft, and the roof is allowed to cave in behind the workers."  Webster's Third New International Dictionary 1334 (1986).

alleged flow loss at Roaring Run.[4] Responding to that complaint, DEP sent another hydrogeologist to investigate the area; it is unclear whether he discovered anything significant. In response to yet another complaint filed by the resident with the DEP in June of 1986, the hydrogeologist returned to the site to conduct further investigation. At this juncture, he observed that two sections of Roaring Run had no visible flow, while another portion had become dryer than it was in November of 1985. As a result, the hydrogeologist recommended that DEP thoroughly investigate the area and, by 1989, DEP had undertaken a full investigation of the Roaring Run watershed.

The resident, along with his wife, in February of 1989, brought a civil action in the Court of Common Pleas of Cambria County against Bethenergy and DEP.[5] Because of this lawsuit and its own investigations, DEP issued a Compliance Order against Bethenergy on December 27, 1989. DEP found that Bethenergy's mining activities at Cambria Mine 33 were unlawfully damaging the Roaring Run and Howells Run watersheds. The salient aspects of DEP's Compliance Order provided as follows:

> With respect to the Roaring Run watershed the investigation reveals that:
>
> . . .
>
> BethEnergy's mining activities in Cambria Mine # 33 have failed to minimize changes to the prevailing hydro-

4. The record is silent as to the status or outcome of the complaint filed with the federal surface mining office.

5. Under Section 13 of Mine Subsidence Act, 52 P.S. § 1406.13, any property owner affected by bituminous coal mining activities may bring suit in the courts of common pleas:

> [T]o compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act against [DEP] where there is alleged a failure of [DEP] to perform any act which is not discretionary with [DEP] or against any other person who is alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act.

52 P.S. § 1406.13(b). The record is also unclear as to the status or outcome of this action.

logic balance in the Roaring Run watershed *in violation of Section 5(e) of the Mine Subsidence Act, 52 P.S. [§ ] 1406.5(e).*[6]

The underground mining activities in Cambria Mine # 33 have failed to maintain the value and reasonably foreseeable uses of Roaring Run and have adversely affected Roaring Run, *in violation of Section 5(e) of the Mine Subsidence Act, 52 P.S. [§ ] 1406.5(e).*

Based on permit No. 11841301, BethEnergy does not intend to implement any measures capable of restoring the pre-mining uses of the Roaring Run watershed, *in violation Section 5(e) of the Mine Subsidence Act, 52 P.S. [§ ] 1406.5(e).*

. . .

With [r]espect to the Howells Run watershed, the investigation reveals that:

The underground mining activities in Cambria Mine # 33 have not minimized the changes to the prevailing hydrologic balance in the Howells Run watershed, *in violation of Section 5(e) of the Mine Subsidence Act, 52 P.S. [§ ] 1406.5(e).*

(DEP Order of 12/27/89, pp. 3–4 (emphasis added).)[7] The Compliance Order of DEP directed Bethenergy to, among

**6.** Subsection 5(e) provides:

An operator of a coal mine subject to the provisions of this act shall adopt measures and shall describe to the department in his permit application measures that he will adopt to prevent subsidence causing material damage to the extent technologically and economically feasible, to maximize mine stability, and to maintain the value and reasonable [sic] foreseeable use of such surface land: Provided, however, That nothing in this subsection shall be construed to prohibit planned subsidence in a predictable and controlled manner or the standard method of room and pillar mining.

52 P.S. § 1406.5(e).

**7.** In addition to violations of the Mine Subsidence Act, DEP also found that Bethenergy's activities at Cambria Mine 33 violated the Clean Streams Law, Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. §§ 691.1—691.1001, and the Administrative Code of 1929, Act of April

other things, limit its mining activities beneath the water-sheds, submit a plan for restoring Roaring Run and establish a monitoring program for all watersheds.

DEP modified its original Compliance Order through a series of correspondence with Bethenergy. Bethenergy then appealed the resulting modified Compliance Order to the Board.[8] Because the Board concluded that DEP failed to meet its burden of establishing by a preponderance of evidence that Bethenergy's mining activities caused environmental damage to either the Roaring Run or Howells Run watersheds, the Board sustained Bethenergy's appeal. As such, the Board's decision ultimately rendered the Compliance Order of the DEP a nullity.

Bethenergy, relying on the fact that it successfully defended DEP's Compliance Order, then filed a Petition for Payment of Costs and Attorney's Fees, citing Subsection 5(g) of the Mine Subsidence Act as authorizing the Board to make such an award.[9] In response to Bethenergy's petition, DEP filed a motion to dismiss contending that Bethenergy was not entitled to recover the attorney's fees and costs incurred in defending DEP's Compliance Order. DEP asserted that, in accordance with Subsection 5(g), the Board has authority to award counsel fees and costs only when a permit or bond release is at issue. Essentially, DEP contended that because Bethenergy was defending an enforcement action, not a DEP order relating to a permit or bond, Bethenergy was ineligible for attorney's fees and costs.

9, 1929, P.L. 177, *as amended,* 71 P.S. § 510–17, *repealed by* Act of June 28, 1995, P.L. 89.

8. DEP modified the Compliance Order by three letters, and Bethenergy appealed each of these letters based on its belief that the underlying Compliance Order was invalid. Because these appeals were all based on a challenge to the underlying Compliance Order, the Board consolidated the appeals for review.

9. Bethenergy also sought attorney's fees and costs based on Subsection 4(b) of the Surface Mining Conservation and Reclamation Act (Surface Mining Act), Act of May 31, 1945, *as amended,* 52 P.S. § 1396.4(b). The Board concluded that because the Compliance Order neither cited nor was issued pursuant to the Surface Mining Act, Subsection 4(b) of that act was inapplicable. Bethenergy has not pursued this issue on appeal.

The Board denied DEP's motion to dismiss. The Board recognized that the Compliance Order was an enforcement action and unrelated, therefore, to the permit or bond requirements of the Mine Subsidence Act. The Board, however, concluded that because DEP interpreted Bethenergy's conduct as a violation of Subsection 5(e) of the Mine Subsidence Act, as evidenced by DEP references to this provision in the Compliance Order, Bethenergy was entitled to the benefit of the attorney's fees and costs language provided for in the corollary provision of Subsection 5(g). The Board found that "[h]aving treated § 5(e) of [the Mine Subsidence Act] as authorizing its enforcement action, DEP must now live with that choice." (Decision of the Board, 12/7/95, p. 8.)

As directed by the Board, the parties then filed a joint stipulation as to the amount and reasonableness of the attorney's fees and costs claimed by Bethenergy, and the Board proceeded to address Bethenergy's underlying petition by way of joint motions for summary judgment. Reaffirming its prior ruling with respect to DEP's motion to dismiss, the Board held that because DEP relied on Subsection 5(e) of the Mine Subsidence Act as the legal basis for its Compliance Order, the attorney's fees and costs provision in Subsection 5(g) applied. Accordingly, the Board denied DEP's motion for summary judgment and granted Bethenergy's motion for summary judgment and ordered DEP to pay Bethenergy $552,500.00 in attorney's fees and costs.

In response to the Board's adjudication, DEP appealed to the Commonwealth Court. The majority of the Commonwealth Court essentially adopted the rationale of the Board and affirmed.[10] In his dissent, Senior Judge Rodgers stated

**10.** The Commonwealth Court held as follows:

[W]e agree with the Board that if the Compliance Order had been issued solely pursuant to Section 9 of [the Mine Subsidence Act], an award of counsel fees would not be authorized. However, we are left with [the] same quandary as the Board as to whether we look to what DEP cited to in the Compliance Order or to the nature of the action, which is indeed an enforcement action for which attorney's fees and costs would not otherwise be awarded absent its citation to Section 5(e) of the [Mine Subsidence Act].

. . .

that he would have reversed the decision of the Board. He opined that the Board had no authority under Subection 5(g) of the Mine Subsidence Act to award attorney's fees and costs to a party that defends a DEP enforcement action and that allowing such an award simply because the DEP cited to Subection 5(e) in its Compliance Order would elevate form over substance.

DEP then filed a Petition for Allowance of Appeal with this Court seeking review of the decision of the Commonwealth Court. Because the issue in this case is one of first impression, we granted review and we now address the appeal of DEP.

## II. DISCUSSION

█ On appeal, DEP argues that the Commonwealth Court erred in affirming the Board's award of attorney's fees and costs because the Board has no authority to grant such an award. According to DEP, Subsection 5(g) empowers the Board to award attorney's fees and costs only in proceedings under Section 5, which involves the permitting and bonding requirements of the Act, not in an enforcement action. Moreover, DEP proffers that its misguided reliance on Subsection 5(e) in the Compliance Order does not serve to authorize the Board to award fees and costs in this enforcement action. Finally, DEP contends that the decision of the Commonwealth Court in the present matter is contrary to its previous decision in *McDonald Land & Mining Co. v. Department of Envtl. Resources*, 664 A.2d 194 (Pa.Cmwlth.1995).

In defense of the Board's award, Bethenergy asserts that the Compliance Order clearly stated that it was relying on Subsection 5(e) as the basis for the claimed violations and as authority for DEP's remedial directives to Bethenergy. Beth-

> Consequently, when DEP cited Bethenergy in its Compliance Order under 5(e), it made it a "proceedings [sic] pursuant to this section" under Section 5(g) making counsel fees awardable by the plain language of that provision.

*Department of Envtl. Protection v. Bethenergy Mines, Inc.*, No. 1601 C.D.1997, slip op. at 11–12 (Pa.Cmwlth. filed Sept. 17, 1998) (footnote omitted).

energy states that Subsection 5(g) permits the Board to award reasonable attorney's fees and costs to a successful litigant in "proceedings pursuant to this section." Bethenergy believes that awards under Subsection 5(g) are not limited to proceedings relating to permitting and bonding, but extend to all proceedings pursuant to Section 5. According to Bethenergy, because DEP's position, as evidenced by its citation to Subsection 5(e) in the Compliance Order, was that this subsection imposed post-permit obligations on Bethenergy, its defense of the Compliance Order qualified as proceedings pursuant to Section 5. Thus, Bethenergy believes that it was entitled to invoke the award provision of Subsection 5(g).

■ Generally, a litigant cannot recover counsel fees or costs from an adverse party unless the General Assembly has expressly authorized such an award. *Merlino v. Delaware County*, 556 Pa. 422, 728 A.2d 949 (1999). As such, our examination here must commence with the statutory provisions utilized by the Board to support its award. The Board looked to the following language contained in Subsection 5(g) of the Mine Subsidence Act: "[t]he Environmental Hearing Board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines have been reasonably incurred by such party [in] *proceedings pursuant to this section*." 52 P.S. § 1406.5(g) (emphasis added). Thus, in accordance with this language, the Board is authorized to award attorney's fees and costs for expenses incurred by a party in proceedings pursuant to Section 5 of the Mine Subsidence Act.[11] Therefore, the question becomes whether Bethenergy's defense of DEP's Compliance Order before the Board constituted proceedings pursuant to Section 5.

11. There is no dispute that the language "this section" encompasses all of Section 5, not merely Subsection 5(g). *See Big "B" Mining Co. v. Department of Envtl. Resources*, 142 Pa.Cmwlth. 215, 597 A.2d 202 (1991), *alloc. denied*, 529 Pa. 652, 602 A.2d 862 (1992) (finding that "proceedings pursuant to this section" language in Section 4(b) of the Surface Mining Act, 52 P.S. § 1396.4(b), signifies entire section not just subsection in which language is contained).

In examining Section 5 of the Mine Subsidence Act and, specifically, Subsection 5(e), we find that Bethenergy's defense of the Compliance Order was not a proceeding pursuant to Section 5. In its entirety, Section 5 sets out a comprehensive permit and bond scheme to ensure that surface land areas are not adversely affected by subsidence caused by underground mining activities. In particular, Subsection 5(e) requires that mine operators adopt protective measures to guarantee the stability of their mines and to prevent material damage to the land and structures on the surface. Additionally, Subsection 5(e) mandates that as part of their permit applications, mine operators must describe the protective measures they will undertake. Nothing in Section 5 concerns DEP's authority to enforce compliance with the Mine Subsidence Act, as that authority is found elsewhere in the Act.[12]

In *McDonald Land & Mining Co. v. Department of Envtl. Resources,* 664 A.2d 194 (Pa.Cmwlth.1995), the Commonwealth Court addressed the issue of whether attorney's fees and costs were available under Subection 4(b) of the Surface Mining Act, 52 P.S. § 1396.4(b), a provision similar to Subsection 5(g) of the Mine Subsidence Act.[13] Specifically at issue in *McDonald* was whether enforcement actions would qualify as proceedings pursuant to Subection 4(b), which was part of a section concerning permit and bond requirements. In addressing that case, the Commonwealth Court concluded that "the scope of Section 4 of [the Surface Mining Act] is limited to permit applications and bonds, and an award under Section 4(b) can only be made in those types of proceedings." 664 A.2d at 197. Thus, the Commonwealth Court held that the Board could not award fees and costs in the enforcement proceeding at issue in

12. Section 9 of the Mine Subsidence Act, 52 P.S. § 1406.9, affords DEP enforcement authority. Section 9 does not contain any provision that would allow for the award of attorney's fees or costs by the Board.

13. Section 4(b) of the Surface Mining Act provides, in part, that the Board "upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings pursuant to this section." 52 P.S. § 1396.4(b).

that case because it was not a proceeding pursuant to the permitting and bonding provisions.

The reasoning of the Commonwealth Court in *McDonald* is equally applicable to the present matter. Subsection 4(b) of the Surface Mining Act and Subsection 5(g) of the Mine Subsidence Act are similar provisions; both are contained in sections concerning permit and bond requirements and both authorize the Board to award attorney's fees and costs "in proceedings pursuant to this section." Because DEP's Compliance Order was clearly an enforcement action unrelated to the permit and bonding proceedings contemplated by Section 5, we find that the attorney's fees and costs language of Subsection 5(g) is inapplicable.

The Board and the Commonwealth Court concluded that Bethenergy's defense of the Compliance Order was a proceeding pursuant to Section 5 by virtue of DEP's reliance on, and reference to, Subsection 5(e). The Board and the Commonwealth Court also believed that this matter is distinguishable from *McDonald* because, unlike *McDonald*, where there was no citation to Section 4 of the Surface Mining Act, DEP specifically relied on Section 5 of the Mine Subsidence Act in its Compliance Order.

DEP's incorrect citation to Subsection 5(e) cannot transform DEP's enforcement action into a proceeding pursuant to Section 5 of the Mine Subsidence Act. We agree with the dissent of Senior Judge Rodgers that this would clearly elevate form over substance. Notwithstanding DEP's inaccurate reference to, and reliance on, Section 5(e), this enforcement action was in no way related to the proceedings contemplated in Section 5. In sum, the reference to, and reliance on, Section 5(e) by DEP cannot serve to defeat the intention of the General Assembly to limit the award of attorney's fees and costs to proceedings involving permit and bond requirements.[14]

14. Moreover, we are cognizant that Bethenergy's argument on appeal takes a step beyond simply relying on DEP's citation to Subsection 5(e). Bethenergy also argues that DEP's position was that Section 5 of the Mine Subsidence Act actually imposed substantial ongoing and post-permit obligations on Bethenergy. Relying on the testimony of DEP's

## III. CONCLUSION

■ Because Subsection 5(g) of the Mine Subsidence Act does not permit the Board to award attorney's fees and costs to a party that successfully defends an enforcement action of the DEP, the Board's award here was improper. The attorney fee and costs recovery provision appears as part of Subsection 5(g) and is limited to claims brought under Section 5. Because this matter did not involve the permit or bond requirements of Section 5 of the Mine Subsidence Act, the Board erred in allowing attorney's fees and costs to Bethenergy.

Thus, in accordance with foregoing reasons, we reverse the decision of the Commonwealth Court.

Justice SAYLOR files a concurring opinion.

Justice ZAPPALA files a dissenting opinion.

SAYLOR, Justice, concurring.

I join the majority in its holding that Section 5(g) of the Mine Subsidence Act, 52 P.S. § 1406.5(g), does not authorize an award of attorneys' fees against the Department in this appeal from a compliance order issued pursuant to the Department's authority under Section 9 of the Act, 52 P.S. § 1406.9. I am not as troubled, however, as the majority by the Department's compliance-order references to Section 5(e) of the Act, 52 P.S. § 1406.5(e), establishing the requirement for Bethenergy's subsidence control plan (also referenced, described and relied upon by the Department as a basis for its action), which was a necessary point of reference from which to evaluate Bethenergy's compliance. Moreover, I question whether the vesting of authority in the Environmental Hearing Board to make a discretionary award of attorneys' fees in

counsel, Bethenergy argues that DEP's citation to Subsection 5(e) was not a mistake and that this subsection was not limited to initial permit applications. Even if DEP believed that Section 5 authorized its actions here, this was erroneous. The fact of the matter is that DEP's Compliance Order was an enforcement action, the authority for which is not found in Section 5 of Mine Subsidence Act. *See* footnote 10, *supra.*

Section 5(g) was ever in the first instance intended by the General Assembly as a basis for awarding monetary relief against the Department related to its essential performance of its statutory role in permitting and bonding matters. Resolution of such question would necessarily entail consideration of the Commonwealth's sovereign immunity in connection with construction of Section 5 of the Act, and whether there is an express, applicable waiver to be found within the Act's provisions. Given the Court's holding that Section 5(g) is not implicated in the first instance, such issue need not be resolved in the present appeal—I write merely to make my reservation express.

ZAPPALA, Justice, dissenting.

I dissent. The Bituminous Mine Subsidence and Land Conservation Act authorizes the Department of Environmental Protection (DEP) to exercise the police powers of the Commonwealth for the purpose of protecting surface land areas which may be affected by underground coal mining. Act of April 27, 1966, Sp. Sess. No. 1, P.L. 31, § 2 *as amended* Oct. 10, 1980, P.L. 874, No. 156, § 1, 52 P.S. § 1406 *et seq.*

In order to effectuate this goal, DEP is empowered in two different ways. First, it regulates this type of mining under a permit scheme. Its power to grant, deny, change, revoke, and otherwise regulate the permits required for underground mining are drawn from sections 5–10, 52 P.S. § 1406.5–10, of the Bituminous Mine Subsidence and Land Conservation Act (the Act). Second, DEP may bring an enforcement proceeding in the courts, seeking an injunction to prevent a violation of the Act, and to otherwise provide for its enforcement. 52 P.S. § 1406.13. The Act specifically states that "Commonwealth Court and the courts of common pleas shall have the power to award injunctions to prevent violations of this act and otherwise to provide for its enforcement upon suit brought by the [DEP]. . . ." 52 P.S. § 1406.13(a).

The powers of DEP to act unilaterally are limited, by the statute, to permitting and rulemaking. *See* 52 P.S. § 1406.5. The majority asserts that DEP's authority to pursue enforce-

ment action is found not in 52 P.S. § 1406.5, but rather in § 1406.9. That section states, in pertinent part:

> The department may issue such orders as are necessary to aid in the enforcement of the provisions of this act. Such orders shall include, but shall not be limited to, orders modifying, suspending or revoking permits and orders requiring persons to cease operation. The right of the department to issue an order under the act is in addition to any penalty which may be imposed pursuant to this act. The department shall have the authority to order the immediate cessation of any operation that is being conducted without a permit, as required by this act, or in any case where safety regulations are being violated or in any case where the public welfare or safety calls for the immediate cessation of the operation until corrective steps have been started by the operator to the satisfaction of the department.

While this section does not limit DEP's authority to issue orders to permitting only, it does not extend that authority to enforcement proceedings. That authority is reserved for the courts by section 1406.13. Only in situations where the mine is being operated without a permit, or where violations of regulations call for the immediate cessation of operation to ensure public safety does section 1406.9 authorize the issuance of an order halting operations. Since an enforcement action must be brought before the courts, the present order could not have been an authorized enforcement action under the Act.

The order issued by DEP in this case was a "Compliance Order" and was labeled as such. The purpose of the Compliance Order was to obtain Bethenergy's compliance with the requirements of its issued permits. As the majority notes, the Compliance Order listed a series of violations of section 5(e) of the Act. That section of the Act states:

> An operator of a coal mine ... shall adopt measures and shall describe to the department in his permit application measures that he will adopt to prevent subsidence causing material damage to the extent technologically and economically feasible, to maximize mine stability, and to maintain

the value and reasonable foreseeable use of such surface land. . . .

That section also states, "[t]he Environmental Hearing Board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines have been reasonably incurred . . . pursuant to this section." 52 P.S. § 1406.5(g).

Despite not having authority to pursue injunctive enforcement outside of the courts, DEP argues that the underlying order here was not an order relating to its permitting function. Yet, the order, in addition to listing the alleged violations under section 5(e), goes on to describe the remedial actions being ordered by DEP. The remedial portion of DEP's order required Bethenergy to stop mining in certain geographical areas. Additionally, in various other geographical areas Bethenergy was ordered to stop mining until it submitted a remedial plan for restoration of the value of an affected stream; demonstrated to DEP's satisfaction that a supported area would meet certain safety factor requirements; implemented a monitoring program; modified its subsidence control plan and six month maps; demonstrated that the mining is not having an effect on an above ground water supply; revised its subsidence control plan; revised its six month mining maps; and submitted various hydrogeological, geological, and biological analyses. These remedial measures track the permit requirements of section 1406 *et seq.* In fact, 52 P.S. § 1406.5, which is titled "Permit; application; map or plan; bond or other security; filing; general rulemaking authority; prevention of damage; mine stability; maintenance of use and value of lands," describes the maps, surveys and studies required in order to obtain a permit. In essence, DEP's order listed requirements that Bethenergy was to meet or risk losing its permits. While the majority concludes that the Commonwealth Court and the Environmental Hearing Board elevated form over substance, I would find that the adjudications below correctly ascertained that in this case, form and procedural process properly followed substance. Therefore, I would hold that the Environmental Hearing Board was acting within the

authority prescribed by the Act when it awarded fees and costs to Bethenergy.