879 A.2d 777

**Fred W. LANG, Jr.**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION and Maple Creek Mining, Inc.**

**Appeal of Department of Environmental Protection.**

Supreme Court of Pennsylvania.

Aug. 2, 2005.

## ORDER

PER CURIAM.

**AND NOW,** this 2nd day of August 2005, we **QUASH** the notice of appeal. Having retained jurisdiction of this matter pursuant to the Order at No. 18 WM 2005 granting permission to appeal an interlocutory order, we **AFFIRM** the Order of the Commonwealth Court.

Justice SAYLOR files a concurring statement in which Chief Justice CAPPY and Justice CASTILLE join.

Justice SAYLOR, concurring.

This matter, which the Court is considering as an interlocutory appeal by permission,[1] involves the proper forum in which a private citizen can bring an action under Section 13(b) of the Bituminous Mine Subsidence Act.[2] *See* 52 P.S. § 1406.13(b).

1. The Commonwealth Court certified its original order pursuant to Section 702(b) of the Judicial Code, *see* 42 Pa.C.S. § 702(b), as it was of the opinion that the matter involves a controlling question of law as to which there is substantial ground for difference of opinion.

2. Act of April 27, 1966, P.L. 31 (as amended 52 P.S. §§ 1406.1–1406.21) (the "BMSA").

Commonly referred to as a "citizen-suit" provision, Section 13(b) states:

> Except as provided in subsection (d), any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act against the department where there is alleged a failure of the department to perform any act which is not discretionary with the department or against any other person who is alleged to be in violation of any provision of this act or any rule, regulation, order or permit issued pursuant to this act. *Any other provision of law to the contrary notwithstanding, the courts of common pleas shall have jurisdiction of such actions, and venue in such actions shall be as set forth in the Rules of Civil Procedure concerning actions in assumpsit.*

*Id.* (emphasis added). Since the statute thus specifically contemplates jurisdiction over covered citizen suits asserted against the Department of Environmental Protection (the "Department" or "DEP") in the courts of common pleas, under its plain terms and as the Commonwealth Court has found, the Washington County court is the proper court of original jurisdiction in this case. *See Lang v. Commonwealth, DEP,* No. 709 M.D. 2004, *slip op.* at 4 (Pa.Cmwlth.Jan.13, 2005).

In spite of this plain meaning approach to the BMSA, however, the Department presently advances a forceful argument that the rationale of this Court's decision in *CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 640 A.2d 372 (Pa.1994), compels the conclusion that exclusive jurisdiction over citizen suits commenced under Section 13(b) resides in the Commonwealth Court. Indeed, in *CRY,* this Court addressed a citizen-suit provision contained in the Clean Streams Law,[3] *see* 35 P.S. § 691.601(c) ("Any other provision of law to the contrary notwithstanding, the courts of common pleas shall have jurisdiction of such actions ..."), that is materially identical to the

**3.** Act of June 22, 1937, P.L.1987 (as amended 35 P.S. §§ 691.1–691.1001).

corresponding provision of the BMSA and, contrary to the plain terms of the statute, determined that jurisdiction lay in the Commonwealth Court.[4]

The *CRY* Court's rationale centered on a conflict that it found between the Clean Streams Law's conferral of jurisdiction in the courts of common pleas, *see* 35 P.S. § 691.601(c), and the Judicial Code's prescription for jurisdiction over actions against state entities in the Commonwealth Court, *see* 42 Pa.C.S. § 761(a)(1). In light of the discerned tension between these jurisdictional provisions, the Court proceeded to select the appropriate forum based upon its evaluation of relevant policy considerations, emphasizing that the Commonwealth Court was conceived in an effort to provide a forum for the uniform and consistent resolution of questions of statewide importance. *See CRY*, 536 Pa. at 473, 640 A.2d at 378 (quoting *Action Coalition of Elders v. Allegheny County Institution District*, 493 Pa. 302, 315–16, 426 A.2d 560, 567 (1981)). Grounded on this objective, *CRY* concluded that jurisdiction over citizen suits under the Clean Streams Law in which DEP is a defendant or indispensable party must be maintained in the Commonwealth Court in order to ensure the application of regular standards to the agency. *See id.; accord Action Coalition*, 493 Pa. at 315, 426 A.2d at 567 (" 'For example, the Department of Environmental Resources must have a clear idea of what its powers and duties are and would be severely handicapped if those powers and duties varied from county to county.' ") (quoting *T & R Painting Co. v. Philadelphia Housing Auth.*, 466 Pa. 493, 498, 353 A.2d 800, 802 (1976)).

4. The litigation in *CRY* was also advanced under citizen-suit provisions of the Air Pollution Control Act, Act of Jan. 8, 1960, P.L. (1959) 2119 (as amended 35 P.S. §§ 4001–4106), *see* 35 P.S. § 4013.6(c), and the Hazardous Sites Cleanup Act, Act of Oct. 18, 1988, P.L. 756 (as amended 35 P.S. §§ 6020.101–6020.1305), *see* 35 P.S. § 6020.1115(b). As these provisions contain incremental variations from the BMSA's citizen-suit provision, since *CRY* was not dependent on the treatment of the three environmental statutes at issue on an aggregated basis, and for ease of reference, my analysis above is centered on *CRY's* treatment relative to the Clean Streams Law provision.

In the present case, the Commonwealth Court distinguished *CRY*, finding the rationale for uniform statewide standards absent. It indicated:

This is in essence an action to compel restoration of damages to land caused by bituminous coal mining. According to the Department's website, bituminous mining occurs today in 21 Pennsylvania counties, all in the central and western areas of the state. Each action would present unique questions of damages to a particular parcel of land as well as the feasibility or adequacy of restoration efforts made. These questions by their very nature, are more amenable to resolution at a local, rather than a statewide level.

*Lang, slip op.* at 3–4 (footnote omitted).

The Department, however, challenges this reasoning, emphasizing that the complaint under review asks the courts to direct when, how, and under what circumstances DEP, as a statewide agency, must carry out its duties under governing statute and regulations. Thus, the Department contends that the case squarely implicates the same sorts of fundamental attributes of an administrative agency's power that were at issue in *CRY*, namely, its enforcement authority and discretion. *See* Brief for Appellant at 21 ("It is hard to think of anything of greater statewide importance to executive administrative agencies in general, or the Pennsylvania DEP in particular, than limiting and directing an agency's enforcement actions.").[5]

---

**5.** DEP also recognizes the Commonwealth Court's reliance on dictum from a footnote in *Department of Environmental Protection v. Bethenergy Mines, Inc.*, 563 Pa. 170, 758 A.2d 1168 (2000), to the effect that original jurisdiction was proper in the courts of common pleas when a suit is brought under Section 13(b) of the BMSA. *See id.* at 174 n. 5, 758 A.2d at 1170 n. 5. The Department notes, however, that this footnote appears to represent nothing more than a straightforward recitation of the statute, as it does not address the relevant decision in *CRY* or its rationale.

Further, the Commonwealth Court's suggestion that any problem with divergence among judicial decisions under the BSMA is ameliorated due to the concentration of bituminous coal mining in western and central Pennsylvania is not persuasive because, *inter alia,* the sort of disparity which was the central concern of *CRY* remains a relevant

The Department appears to be correct that the uniformity concern that controlled the outcome in *CRY* centered upon the consistent and regular application of standards governing Commonwealth agencies over and across the range of cases implicating their enabling statutes and governing regulations, and not on the statewide significance of discrete aspects of individual cases, such as the number of citizens or counties that happen to be immediately affected by a particular instance of litigation. Accordingly, I believe that *CRY's* rationale is pertinent in resolving the jurisdictional dispute in the present case. Moreover, application of the rationale offered by the Commonwealth Court to distinguish *CRY* would result either in identical citizen-suit provisions being construed differently in two parallel statutory schemes, or, alternatively, in an vague jurisdictional scheme in which the appropriate court of original jurisdiction would be determined on a case-by-case basis, depending on the reviewing court's assessment of the importance of the particular litigation to the general public interest.

While I therefore agree with DEP that *CRY* is relevant and that application of its reasoning would require relief in the Department's favor here, I am able to join the Court's present *per curiam* affirmance of the Commonwealth Court's decision denying relief solely because I believe that *CRY* should be limited and/or overruled on the ground that its rationale was faulty. Specifically, *CRY* relied on an asserted conflict between a general statutory provision, 42 Pa.C.S. § 761(a)(1), and a particular one, 35 P.S. § 691.601(c), to justify reliance on a policy-based assessment to give effect solely to the general provision. Such approach, however, contravenes the General Assembly's prescription that, in the event of an irreconcilable conflict between general and particular statutes, *the particular* statute is to be afforded precedence. *See* 1 Pa.C.S. § 1933. Moreover, in discerning a conflict in the first instance, *CRY* also failed to give meaning or effect to the Clean

concern when 21 different county court systems are potentially involved. In any event, certainly the energy-related and environmental implications associated with coal mining are matters of statewide concern.

Streams Law's express conferral of jurisdiction in the courts of common pleas "[a]ny other provision of law to the contrary notwithstanding." 35 P.S. § 691.601(c). In light of these deficiencies, although I acknowledge the legitimacy of DEP's efforts to invoke *CRY's* reasoning in light of its status as prevailing precedent, as well as the Department's valid and substantial concern about the uniform and consistent treatment of administrative agencies, I conclude that the plain language of the BMSA establishing jurisdiction in the common pleas courts must control.

In sum, it is my position that the benefits derived from enforcing the plain terms of environmental citizen-suit provisions in terms of generating certainty and consistency in the jurisdictional determination, affording essential deference to clear legislative direction, and fostering respect for the Court's own decision making processes outweigh any gain that might be derived by giving effect to *CRY's* judicial, policy-based selection of an alternate jurisdictional scheme. *Accord* PA. CONST. art. V § 10(c) (recognizing the power of the General Assembly to prescribe the courts' jurisdiction).

Chief Justice CAPPY and Justice CASTILLE join this concurring statement.