928 A.2d 990

**SOLEBURY TOWNSHIP**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
and Department of Transportation.

Appeal of Department of Transportation.

**Buckingham Township**

v.

**Department of Environmental Protection**
and Department of Transportation.

Appeal of Department of Transportation.

**Solebury Township**

v.

**Department of Environmental Protection**
and Department of Transportation.

Appeal of Department of Environmental Protection.

**Buckingham Township**

v.

**Department of Environmental Protection**
and Department of Transportation.

Appeal of Department of Environmental Protection.

Supreme Court of Pennsylvania.

Argued Dec. 7, 2005.

Decided Aug. 20, 2007.

148

150

---

Kenda Jo Marie Gardner, Neal Thomas Brofee, Andrew S. Gordon, Robert John Shea, Harrisburg, for Dept. of Transportation.

Anderson Lee Hartzell, Louise S. Thompson, Conshohocken, for Dept. of Environmental Protection.

Richard T. Abell, Paul Aloysius Logan, King of Prussia, for Solebury Tp.

Robert J. Sugarman, Philadelphia, for Buckinghan Tp.

CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice SAYLOR.[1]

We granted allowance of appeal in this matter to determine the propriety of awarding attorneys' fees and costs under Section 307(b) of Pennsylvania's Clean Streams Law, when the underlying action, issuance of a water quality certification pursuant to Section 401 of the Federal Water Pollution Control Act, has been deemed moot by the voluntary revocation of the certification.

This case arose when the Pennsylvania Department of Transportation ("PennDOT") applied to the Pennsylvania Department of Environmental Protection ("DEP") (collectively, "Appellants") for a water quality certification, required by Section 401 of the Federal Water Pollution Control Act, *see* 33 U.S.C. § 1341 (the "Clean Water Act"), in connection with its proposed U.S. Route 202, Section 700 Bypass Project, which would connect Upper Gwynedd Township in Montgomery County to the existing State Route 611 Bypass in Doylestown Township, Bucks County. In 1989, due to the pronounced traffic congestion and growth estimates for the region, preliminary engineering studies commenced to determine the feasibility of the project. The Federal Highway Administration produced a draft environmental impact statement, noting that the bypass project was directed toward improving traffic congestion and driver safety on Route 202, and that agency's formal approval of the project was granted on August 27, 1998. In order to obtain the necessary federal permits for the bypass project, PennDOT applied to DEP for the requisite Section 401 Certification. On January 20, 1999, DEP issued the Section 401 Certification, approving the bypass project with certain reservations that are not presently the subject of the Townships' appeal. *See* Letter from James Newbold, DEP, to Vito A. Genua, PennDOT (Jan. 20, 1999), RR. at 64a.

1. This matter was reassigned to this author.

Solebury Township and Buckingham Township (collectively, the "Townships"), as well as the Delaware Riverkeeper, the Delaware Riverkeeper Network, and the American Littoral Society (collectively, "Delaware Riverkeeper"), challenged the issuance of the Section 401 Certification before the Environmental Hearing Board (EHB).[2] Appellants filed a motion for summary judgment, arguing, inter alia, that the Townships and Delaware Riverkeeper lacked standing. The Townships and Delaware Riverkeeper filed a cross-motion for summary judgment, asserting that the issuance of the Section 401 Certification was the product of an illegally truncated review process, in contravention of certain DEP regulations. These motions were scheduled for an en banc oral argument, but, seven days prior to argument, PennDOT requested that the Section 401 Certification be rescinded, and, on November 10, 2003, DEP complied with the request. Two days later, PennDOT filed a motion to dismiss the challenge as moot, as the rescission of the Section 401 Certification rendered the requested relief unavailable.

■ The EHB explained that, under Section 401(a) of the Clean Water Act, any person or entity applying for a federal permit to place dredge or fill material into navigable waters "shall provide the [federal] licensing or permitting agency [with] a certification from the State in which the discharge originates or will originate ... that any such discharge will comply with the applicable provisions of [the Clean Water Act]." 33 U.S.C. § 1341(a). A state may impose conditions or restrictions upon the issuance of such a certification, which become terms of the federal license, to ensure that any discharge will also comply with appropriate requirements under state law. See 33 U.S.C. § 1341(d); see also, PUD No. 1 of Jefferson County v. Washington Department of Ecology,

**2.** The Townships opposed the bypass project because they believed that it would spoil the scenic nature of the area and significantly increase the traffic into the Townships. In this regard, they have litigated numerous aspects of the bypass project in both state and federal courts. See, e.g., Buckingham Twp. v. Wykle, 157 F.Supp.2d 457 (E.D.Pa.2001), (resolving claims related to, inter alia, alleged violations of the Clean Air Act, 42 U.S.C. § 7506), affirmed, 27 Fed.Appx. 87 (3d Cir.), cert. denied, 537 U.S. 826, 123 S.Ct. 120, 154 L.Ed.2d 38 (2002).

511 U.S. 700, 707–08, 114 S.Ct. 1900, 1907, 128 L.Ed.2d 716 (1994) (explaining a state's responsibilities under Section 401). Notably, the "discharge" contemplated by the statute encompasses the "discharge of pollutants," *see* 33 U.S.C. § 1362(16), including such materials as dredged spoil, solid waste, heat, rock, sand, dirt, and industrial waste. *See* 33 U.S.C. § 1362(6). Thus, the EHB clarified that a Certification under Section 401 was a prerequisite to obtaining federal permits related to the bypass project. However, because the Section 401 Certification had been rescinded, the EHB refused to rule on the merits of the Townships' and Delaware Riverkeeper's challenges and dismissed the appeals as moot. *See Solebury Twp. v. Department of Environmental Protection,* 2004 WL 103132, at *4 (Pa.Envt'l.Hrg.Bd. Jan. 16, 2004).

Subsequently, Buckingham and Delaware Riverkeeper sought to recover attorneys' fees pursuant to the Costs Act, *see* Act of Dec. 13, 1983, P.L. 1127 (as amended, 71 P.S. §§ 2031–35), and Solebury requested counsel fees under Section 307(b) of the Clean Streams Law,[3] *see* 35 P.S. § 691.307(b). The Costs Act petitions were amended to include requests for attorneys' fees and costs under Section 307. No evidentiary record was created with regard to the applications for attorneys' fees, as the EHB did not hold a hearing to elicit testimony or legal argument. In its opinion concerning the petitions under the Costs Act, the EHB explained that, as a general rule, each party is responsible for its own counsel fees and costs, absent bad faith or dilatory, obdurate or vexatious conduct. *See Lucchino v. Department of Environmental Protection,* 570 Pa. 277, 282, 809 A.2d 264, 267 (2002) (citing *Tunison v. Commonwealth,* 347 Pa. 76, 79, 31 A.2d 521, 523 (1943); *Department of Environmental Protection v. Bethenergy Mines, Inc.,* 563 Pa. 170, 179, 758 A.2d 1168, 1173 (2000)). Several statutes, including the Costs Act and the Clean Streams Law, modify this rule, providing the EHB with the authority to award attorneys' fees and costs to a prevailing party in certain circumstances. The EHB determined, howev-

3. Act of June 22, 1937, P.L.1987 (as amended, 35 P.S. §§ 691.1–691.1001) (the "Clean Streams Law").

er, that neither Buckingham nor Delaware Riverkeeper were entitled to an award under the Costs Act because the statute's requirement of an adversarial adjudication entailed "prosecutorial or enforcement action initiated by an agency," which was not the nature of the present matter. *See Solebury Twp. v. Department of Environmental Protection*, 2004 WL 504860, at *3 (Pa.Envt'l.Hrg.Bd. Mar. 4, 2004).[4]

With regard to the petitions under Section 307(b), the EHB observed that previous adjudications involving attorneys' fees under Section 307 have also concerned counsel fees under Section 4(b) of the Surface Mining Conservation and Reclamation Act,[5] *see* 52 P.S. § 1396.4(b), *superseded,* 27 Pa.C.S. § 7708, and utilized the same analysis for both provisions. *See, e.g., Lucchino*, 570 Pa. at 280, 809 A.2d at 266; *Medusa Aggregates Co. v. Department of Environmental Resources*, 1995 EHB 414, 428 n. 7, 1995 WL 227814, at *8 n. 7 (Pa. Envt'l.Hrg.Bd. Apr. 6, 1995). The EHB determined, however, that the present matter does not implicate the latter statute, as the bypass project did not involve mining. In cases involving both Section 307 and Section 4(b), the EHB explained that, to determine whether an award of attorneys' fees is appropriate, courts have applied an analysis that has become known as the *Kwalwasser* test, according to which "(1) a final order must have been issued; (2) the applicant for the fees and expenses must be the prevailing party; (3) the applicant must have achieved some degree of success on the merits; and (4) the applicant must have made a substantial contribution to a full and final determination of the issues." *Big B. Mining Co. v. Department of Environmental Resources*, 155 Pa.Cmwlth. 16, 19, 624 A.2d 713, 715 (1993) (citing *Kwalwasser v. Department of Environmental Resources*, 131 Pa.Cmwlth. 77, 82, 569 A.2d 422, 424 (1990)). The EHB determined that it was appropriate to apply this test to the present matter, as, in its

4. The EHB's decisions regarding attorneys' fees under the Costs Act were not appealed to the Commonwealth Court and are not presently before this Court.

5. Act of May 31, 1945, P.L. 1198 (as amended, 52 P.S. §§ 1396.1–1396.19a) (the "SMCRA").

view, there was no reason to apply different criteria for petitions solely under Section 307.

On the merits, the EHB determined that, although a final order had been issued, namely, the dismissal of the case as moot, none of the remaining criteria had been fulfilled. Specifically, the EHB reasoned that the Townships and Delaware Riverkeeper were not prevailing parties because no ruling on the merits had been made, notwithstanding the parties' argument that they had obtained precisely the relief sought, *i.e.*, removal of the Section 401 Certification. Similarly, the EHB determined that the Townships and Delaware Riverkeeper had not achieved any degree of success on the merits, as, again, no ruling on the merits had been issued. In addition, because there had been no full and final determination of any underlying issues, the EHB held that no substantial contribution to the resolution of those issues could have been made.[6] Thus, the EHB denied the motions for counsel fees under Section 307(b) of the Clean Streams Law. Given the EHB's conclusion that no fee award was justified, it did not determine whether the amendments to Buckingham's and Delaware Riverkeeper's petitions were proper. *See Solebury Twp. v. Department of Environmental Protection*, 2004 WL 817743, at *1 (Pa.Envt'l.Hrg.Bd. Mar. 24, 2004).

The Townships appealed to the Commonwealth Court, arguing that they had achieved success on the merits sufficient to sustain an award of attorneys' fees. *See Solebury Twp. v. Department of Environmental Protection*, 863 A.2d 607 (Pa. Cmwlth.2004).[7] As an initial matter, the Commonwealth

---

**6.** The EHB also noted that it had previously required an additional demonstration that the appeal was brought in bad faith when a permitee sought to recover costs and counsel fees from a third-party appellant. *See Lucchino v. Department of Environmental Protection,* 1998 EHB 556, 1998 WL 309105, at *2 (Pa.Envt'l.Hrg.Bd. May 27, 1998); *Alice Water Protection Association v. Department of Environmental Protection,* 1997 EHB 840, 1997 WL 610299, at *2 (Pa.Envt'l.Hrg.Bd. Sept. 17, 1997). However, the EHB did not apply that requirement to the present matter, as it was the third parties themselves who sought to recover attorneys' fees.

**7.** Delaware Riverkeeper did not appeal the EHB's denial of their motion for attorneys' fees and are not currently parties to this matter.

Court upheld the amendment to Buckingham's petition to include a request for counsel fees under Section 307, noting that no prejudice to Appellants would result because they had notice that Buckingham was seeking counsel fees due to its initial petition and that Section 307 would be at issue via Solebury's petition. *See id.* at 609–10. Additionally, the Commonwealth Court determined that the Townships' challenge was properly brought pursuant to the Clean Streams Law such that it fell within the ambit of the fee-shifting provision of Section 307. Although a Section 401 Certification is not, technically speaking, a permit, the court noted that it is a prerequisite and a precursor to the issuance of a permit. Because PennDOT was in the process of seeking a permit when the challenge to the Section 401 Certification arose, the Commonwealth Court held that its action was pursuant to the Clean Streams Law such that the Townships' petitions for attorneys' fees under Section 307 were appropriate.

On the merits of the Townships' applications for attorneys' fees, the Commonwealth Court applied the *Kwalwasser* test, but disagreed with the EHB's conclusions, and found that all four prongs of the test had been satisfied. The court noted that no party disputed that a final order had been issued in this matter, as the Townships' appeals had been dismissed as moot. Concerning the second part of the test, the Commonwealth Court applied the definition of "prevailing party" contained within the Costs Act, pursuant to which a party may be deemed to have prevailed when an agency withdraws from or otherwise terminates the matter. *See* 71 P.S. § 2032 (defining "prevailing party" as "[a] party in whose favor an adjudication is rendered on the merits of the case or who prevails due to withdrawal or termination of charges by the Commonwealth Agency or who obtains a favorable settlement approved by the Commonwealth Agency initiating the case."). Since the Townships achieved the goal they sought, namely, revocation of the Section 401 Certification, the court found that the voluntary

They did, however, file an amicus brief, raising substantially the same arguments as those advanced by the Townships.

rescission of the Certification did not affect the Townships' status as prevailing parties.

Further, the Commonwealth Court determined that the Townships had achieved some success on the merits. Because neither DEP nor PennDOT proffered a reason for revocation of the Section 401 Certification, the court concluded that the litigation instituted by the Townships was the cause of Penn-DOT's request for rescission. *See Solebury Twp.*, 863 A.2d at 611 ("This Court cannot close its eyes to the inevitable conclusion that DEP and [Penn]DOT sought to suddenly avoid a full argument on the merits for either no reason at all or because their legal position was untenable."). The Commonwealth Court emphasized that the Section 401 Certification was rescinded shortly before argument and did not accept Penn-DOT's suggestion that a change in governmental administration affected its decision not to proceed with the bypass project. Similarly, the Commonwealth Court held that the Townships had made substantial contributions to a full and final determination on the merits because the only contributions to the final determination were the challenges raised by the Townships. Observing that there was no evidence to show that the Section 401 Certification would have been rescinded absent the present litigation, the court held that the *Kwalwasser* test had been met and remanded the case for imposition of fees and costs. Additionally, the Commonwealth Court viewed the conduct of DEP and PennDOT in "suddenly and inexplicably" rescinding the Section 401 Certification as vexatious, especially in light of Appellants' claim that an award of fees and costs would be inappropriate as no merits determination had occurred. *See id.* at 611.

## I.

The threshold issue in this matter is whether litigation concerning a Section 401 Certification may be subject to the fee-shifting provision of Section 307(b) of the Clean Streams Law.[8] In this regard, Appellants argue that an

8. As this matter presents questions of statutory interpretation, our standard of review is *de novo*. *See In re Carroll*, 586 Pa. 624, 636, 896

award of attorneys' fees under Section 307 only applies to actions involving the issuance of a state law permit for industrial waste discharge and does not encompass the issuance of a Section 401 Certification. The Section 401 Certification, in Appellants' view, is entirely a creation of federal law, required solely for federal permit applications pursuant to Section 404 of the Clean Water Act. *See* 33 U.S.C. § 1344; *see generally, PUD No. 1 of Jefferson County,* 511 U.S. at 704–08, 114 S.Ct. at 1904–07 (explaining the distinct roles of the federal and state governments created by the Clean Water Act to effectuate the enhancement of water quality). In order to obtain the necessary permits under Pennsylvania law, however, a complete application must be submitted pursuant to Chapter 105 of DEP's regulations. *See* 25 Pa.Code § 105.13. Appellants thus distinguish the issuance of a Section 401 Certification from the purpose of state law permit applications; because neither Section 307 nor Chapter 105 requires a Section 401 Certification, Appellants argue, issuance of the certification does not impact state law permitting practices. Therefore, Appellants contend that the Townships' challenge to DEP's issuance of a water quality certification for the bypass project did not implicate any provisions of the Clean Streams Law and that the Commonwealth Court erred in concluding that the present matter fell within the scope of the fee-shifting provision of Section 307.

The Townships, on the other hand, argue that the plain language of Section 307 clearly encompasses any action involving the Clean Streams Law, including challenges to the issuance of a Section 401 Certification. They observe that Section 307, in pertinent part, provides:

### § 691.307. Industrial waste discharges

Any person having an interest which is or may be adversely affected by any action of the department under this section may proceed to lodge an appeal with the Environmental

A.2d 566, 573 (2006). In considering the propriety of an award of counsel fees, however, appellate review is limited to determining whether the award constituted an abuse of discretion. *See Thunberg v. Strause,* 545 Pa. 607, 614–15, 682 A.2d 295, 299 (1996).

Hearing Board in the manner provided by law, and from the adjudication of said board such person may further appeal as provided in Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure). The Environmental Hearing Board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in *proceedings pursuant to this act.*

35 P.S. § 691.307(b) (emphasis added). The Townships contend that the Legislature clearly contemplated awards of attorneys' fees in situations, including the present matter, where the proceedings arise from any aspect of the Clean Streams Law, evidenced by the broad phrase "proceedings pursuant to this act." This interpretation, according to the Townships, is supported by this Court's declaration that fee-shifting provisions should be liberally construed. *See Lucchino,* 570 Pa. at 285, 809 A.2d at 269 ("For reasons of public policy, Pennsylvania courts have construed these statutory sections liberally 'to justly compensate parties who have been obliged to incur necessary expenses in prosecuting lawful claims or in defending against unjust or unlawful ones.'" (quoting *Tunison,* 347 Pa. at 79, 31 A.2d at 523)). In this regard, the Townships observe that they never argued that Appellants failed to follow any aspect of federal law; instead, their challenge was related to the state law process by which the Section 401 Certification was issued in the present matter, as they believed that DEP failed to correctly follow certain regulations adopted under the authority of the Clean Streams Law. *See* 25 Pa.Code ch. 105. Further, the Townships assert, PennDOT affirmatively agreed that the underlying litigation concerning their challenge to DEP's practices was a proceeding pursuant to the Clean Streams Law. *See* Commonwealth of Pennsylvania, Department of Transportation's Response to Solebury Township's Application for Attorney Fees and Costs Pursuant to the Clean Streams Law, RR. at 2372a, ¶ 4. Accordingly, the Townships contend that the present matter clearly falls within the ambit of the attorneys' fees provision of Section 307.

160

■■■ We agree with the Commonwealth Court and the Townships that the fee-shifting provision of Section 307 may be implicated in a situation where the underlying litigation concerns water quality certification and associated appeals, at least in circumstances where such proceedings arise out of the provisions of the Clean Streams Law or accompanying regulations. As the Townships observe, the phrase "proceedings pursuant to this act," 35 P.S. § 691.307(b), contained within the provision granting the EHB discretionary authority to award fees is broadly phrased and plainly encompasses litigation arising under the Clean Streams Law. Notably, the Clean Streams Law expressly grants DEP the authority to "[i]ssue such orders as may be necessary to implement the provisions of this act or the rules and regulations of the department." 35 P.S. § 691.5(b)(7). Moreover, the regulation addressing the procedure for obtaining a water quality certification for purposes of Section 401 of the Clean Water Act was promulgated under the authority of, inter alia, the Clean Streams Law, see 25 Pa.Code § 105.15(b), and this provision was the subject of the dispute between the Townships and Appellants. Significantly, PennDOT expressly admitted that the underlying litigation arose out of regulations promulgated pursuant to the Clean Streams Law. See Solebury Township's Application for Attorney Fees and Costs Pursuant to the Pennsylvania Clean Streams Law, RR. at 2306a, ¶ 4 ("Specifically, [Solebury's] challenge was brought under 25 Pa.Code [ch.] 105, which implements aspects of the Commonwealth's 401 [water quality certification] program."); Commonwealth of Pennsylvania, Department of Transportation's Response to Solebury Township's Application for Attorney Fees and Costs Pursuant to the Clean Streams Law, RR. at 2372a, ¶ 4 ("Admitted. By way of further answer, Section 105.15(b) is the only provision of 25 Pa.Code Ch. 105 that addresses treatment of a 401 Water Quality Certification (WQC)."); see also Department of Transportation's Response, RR. at 2373a, ¶ 7 ("In bringing this appeal, Appellant Solebury Township sought to have the Board to invalidate the process used by DEP and PennDOT to obtain the [water quality certification] for the project."). In its brief to this Court, DEP also acknowledges

the integral role of its regulations in the Townships' initial challenge to its actions. *See* Brief for Appellant DEP at 13 n. 5 (citing 25 Pa.Code § 105.15(b) and stating, "These regulations were the focal point of the underlying litigation."); *id.* at 25–26 ("The underlying contention in the Townships' appeal of the 401 Certification was a challenge to the Integrated Review Process by which DEP reviews and issues (or denies) 401 Certifications ... The Townships challenged the lawfulness of this Integrated Review Process in the context of DEP's implementing regulations.").

Further, the plain language of such regulations indicates that DEP regards the Section 401 Certification process as a subset of its consideration of state law permit applications. *See* 25 Pa.Code § 105.15(b) (requiring any applicant seeking a water quality certification to submit an environmental assessment equivalent to that required for a state law permit). In addition, DEP has authority to place limitations or conditions upon Section 401 Certifications, *see* 33 U.S.C. § 1341(d), which may directly implicate subjects within the scope of the Clean Streams Law, and, indeed, such has occurred in the present matter. *See* Letter from James Newbold, DEP, to Vito A. Genua, PennDOT (Jan. 20, 1999), R.R. at 64a, ¶ 4 (conditioning the water quality certification upon the development of an Erosion and Sedimentation Pollution Control Plan in accordance with Chapter 102 of DEP's regulations, which were promulgated pursuant to Sections 5 and 402 of the Clean Streams Law, *see* 35 P.S. §§ 691.5, 691.402.). In light of the above, we conclude that, at least under the circumstances presented in this case, challenges to the Clean Streams Law aspects of the issuance of Section 401 Certifications are "proceedings pursuant to this act" for purposes of the fee-shifting provision of Section 307.

## II.

 Having determined that litigation involving water quality certifications under Section 401 of the Clean Water Act may be subject to fee-shifting under Section 307 of the Clean Streams Law, at least under the circumstances of the present

case, we must now address the appropriate test by which such applications for attorneys' fees may be resolved. In this connection, Appellants focus their arguments on the four prong *Kwalwasser* test, apparently assuming that it is the only applicable standard. Indeed, PennDOT asserts that this Court has upheld application of the *Kwalwasser* test and maintains that no dispute regarding whether the *Kwalwasser* test should control has been raised. *See* Brief for Appellant PennDOT at 23 (citing *Lucchino*, 570 Pa. at 280, 809 A.2d at 266).[9] However, Appellants do observe that the criteria elucidated in *Kwalwasser* and subsequent cases were derived in part from the regulations promulgated pursuant to the federal Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201–1328 ("federal SMCRA"). *See Kwalwasser v. Department of Environmental Resources*, 1988 EHB 1308, 1988 WL 161059 at *2 (Pa.Env.Hrg.Bd. Dec. 22, 1988) ("Regulations adopted pursuant to [the federal SMCRA] require, inter alia, that the proceedings result in a final order and that the petitioner prevail 'in whole or in part, achieving at least some degree of success on the merits, upon a finding that such person made a substantial contribution to a full and fair determination of the issues.'" quoting 43 C.F.R. § 4.1294(b) (1985)). In *Kwalwasser*, Appellants note, the EHB's analogy to federal standards for fee-shifting was considered appropriate because the federal and state statutes concerning coal mining activities sought to regulate the same activity in a coordinated manner. *See id.* Thus, assuming that similar reliance in the context of Section 307 is also appropriate, Appellants argue that federal court decisions support the EHB's construction of the *Kwalwasser* test in the present matter. *See, e.g., Buckhannon Board and Care Home, Inc. v.*

9. Although Appellants argue that the Townships have acceded to the *Kwalwasser* criteria in framing their arguments before the EHB and the Commonwealth Court, the Townships have clearly asserted a much broader application of those criteria than applied by the EHB, specifically to subsume bad faith and vexatious conduct. *See, e.g.,* Solebury Township's Application for Attorney Fees and Costs Pursuant to the Pennsylvania Clean Streams Law at 4–5, RR. at 2308–09. Thus, the Townships have not waived any argument concerning the application of a test other than *Kwalwasser* to determine whether attorneys' fees may be awarded under Section 307 in this matter.

*West Virginia Department of Health and Human Resources,*
532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Ruckel-shaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Appellants explain that the United States Supreme Court has concluded that, in order to be considered a prevailing party under the fee-shifting provisions contained within certain federal statutes, that party must have obtained a judgment on the merits or a court-ordered consent decree. *See Buckhannon,* 532 U.S. at 600, 121 S.Ct. at 1838. In addition, Appellants observe, *Buckhannon* clarified that a voluntary alteration in the conduct of one party was not sufficient to consider the opposing party prevailing on the merits, even when the lawsuit itself caused such a change. *See id.* at 610, 121 S.Ct. at 1843.

Applying the *Kwalwasser* criteria in light of *Buckhannon,* Appellants contend that the EHB's interpretation of that test in the present matter was correct because, in Appellants' view, the Townships may not be considered prevailing parties when no merits assessment has been conducted, as the case was dismissed as moot due to the revocation of the Section 401 Certification. Similarly, Appellants claim that their voluntary alteration of the circumstances, which rendered the matter moot, does not constitute success on the merits. *Cf. id.* at 606, 121 S.Ct. at 1841 ("We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." (citation omitted)). Appellants also argue that the Commonwealth Court erred by finding that the Townships had made a substantial contribution to the final determination of the issues because Appellants' voluntary rescission of the Section 401 Certification could have been a result of circumstances unrelated to the present litigation, namely, a succession in government administration.[10] Appellants contend that,

**10.** There appears to be some uncertainty as to whether a state agency has statutory authority to revoke a Section 401 Certification after the appeals period has expired, absent compliance with the terms of Sec-

by effectively requiring them to proffer reasons for the revocation, the decision of the Commonwealth Court conflicts with this Court's determination that the party seeking counsel fees bears the burden of establishing its entitlement to such fees. *See Jones v. Muir*, 511 Pa. 535, 542, 515 A.2d 855, 859 (1986) ("The applicant for counsel fees has the burden of proving his/her entitlement thereto."). In addition, Appellants observe that the EHB's denial of attorneys' fees in the present matter was consistent with its denial of such fees in prior cases. *See, e.g., Raymond Proffitt Foundation v. Department of Environmental Protection*, 1999 EHB 124, 1999 WL 222936 at *3 (Pa.Env.Hrg.Bd. Mar. 26, 1999) (applying the *Kwalwasser* test and denying fees under the SMCRA when a matter was dismissed as moot due to the voluntary withdrawal of a permit). Notably, Appellants further assert that the Commonwealth Court usurped the role of the EHB by rejecting their explanation for the withdrawal of the Section 401 Certification and characterizing their conduct as vexatious absent a hearing and agency findings on such issues. *Cf. id.* at *9–10 (refusing to find that a permittee acted in bad faith by continuing with litigation knowing that the permit would eventually be withdrawn).

The Townships, by contrast, argue that this Court specifically reserved the issue of the continuing vitality of the *Kwalwasser* test in *Lucchino*. *See Lucchino*, 570 Pa. at 286 n. 21, 809 A.2d at 270 n. 21 ("In light of the enactment by the General Assembly of [27 Pa.C.S. §§ 7707–7708] . . . and be-

tion 401(a)(3) of the Clean Water Act, *see* 33 U.S.C. § 1341(a)(3). *See, e.g., Keating v. Federal Energy Regulatory Commission*, 927 F.2d 616, 622 (D.C.Cir.1991) (holding that revocation of the certification after a federal license has been issued is only proper in accordance with the itemized reasons of Section 401(a)(3)); *Triska v. Department of Health and Environmental Control*, 292 S.C. 190, 355 S.E.2d 531, 533–34 (1987) (concluding that the state environmental agency lacked authority to revoke a water quality certification at the behest of third parties once the certification had been granted and the appeal process expired). However, as the parties have not raised this issue before this Court and it does not appear that there has been any detrimental reliance (other than the litigation expenditures in opposition to the certification that are the subject of the present appeal), we need not resolve this question at the present time.

cause it is unnecessary to the resolution of the matter before us, we decline to address the validity or invalidity of the [*Kwalwasser*] test as applied by the EHB and affirmed by the Commonwealth Court."). They observe that Section 307 does not specify by which standards an application for attorneys' fees should be judged; instead, Section 307 provides the EHB with broad discretion to award counsel fees "upon the request of any party." 35 P.S. § 601.307(b). Indeed, the Townships assert, under the plain language of Section 307, the party seeking fees need not even be prevailing. In the Townships' view, the *Kwalwasser* test is not premised upon the EHB's statutory discretion to shift the costs of litigation, but was created via incorporation of federal regulations, which do not take into account Pennsylvania public policy. *Cf. Big B Mining,* 155 Pa.Cmwlth. at 19, 624 A.2d at 715 (disapproving the EHB's adoption of restrictive federal standards to determine petitions for attorneys' fees under the SMCRA). Moreover, the Townships observe that comparison of fee-shifting provisions must be performed carefully, as the purpose and language of such statutes may differ. *See Lucchino,* 570 Pa. at 284, 809 A.2d at 268 ("Not all fee-shifting statutes are the same and care is required in comparing such statutes, as the language or purpose of a particular fee-shifting provision will affect its construction and, hence, its application."). Thus, the Townships assert that the EHB's reliance on federal standards to formulate a test for fee-shifting under Pennsylvania law was inappropriate because the policies motivating such provisions under the federal and state statutes are different. *Compare* H.R.Rep. No. 95–218, at 90–91 (1977) (noting that fee-shifting under the federal SMCRA seeks to encourage citizen participation while discouraging frivolous suits by providing different standards for awards of attorneys' fees depending upon whether the prevailing party is the plaintiff or the defendant), *with Big B Mining,* 155 Pa.Cmwlth. at 18–19, 624 A.2d at 714–15 (rejecting application of differing standards for counsel fee awards under the SMCRA based upon a distinction between permittees and other parties as contrary to Pennsylvania law).

More specifically, the Townships contend that Section 307, like other fee-shifting statutes, must be liberally construed in order to effectuate the goal of compensating parties who have incurred great expense in maintaining necessary claims. *See Lucchino*, 570 Pa. at 285, 809 A.2d at 269 (quoting *Tunison*, 347 Pa. at 79, 31 A.2d at 523). Thus, the Townships assert that the broad statutory discretion provided to the EHB to award counsel fees under Section 307 is not so limited as to encompass only the *Kwalwasser* criteria, narrowly applied. Instead, should such a test be utilized, the Townships maintain that a broader interpretation of those criteria than that employed by the EHB in the present matter is required. In this regard, the Townships observe that there is no dispute that a final order had been issued in the present matter. In addition, they assert that a dismissal on the ground of mootness due to Appellants' voluntary rescission of the Section 401 Certification should be deemed sufficient to consider the Townships to have prevailed with some degree of success on the merits.

The Townships argue that they are prevailing parties because they achieved their sole objective in pursuing an appeal to the EHB, *i.e.*, termination of the Section 401 Certification. The Townships also claim that *Kwalwasser's* requirement of some degree of success on the merits cannot be interpreted as necessitating a court order in favor of a particular party. The Townships view Appellants' reliance on *Buckhannon* for a contrary proposition as misplaced because *Buckhannon* involved fee-shifting provisions under the Fair Housing Amendments Act, *see* 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act, *see* 42 U.S.C. § 12205, which do not parallel the language or subject matter of Section 307. Specifically, the Townships observe that the statutes at issue in *Buckhannon* require that a party be prevailing in order to recover attorneys' fees, whereas Section 307 does not contain such restrictive language. Similarly, the Townships explain that *Buckhannon* did not address an analogous situation, as the underlying action in that case was rendered moot due to a newly enacted statute and not the action of any party. *See*

*Buckhannon,* 532 U.S. at 601, 121 S.Ct. at 1838. The Townships contend that the position of the dissenting opinion in *Buckhannon,* which concluded that a prevailing party is one who has achieved the practical relief sought, more closely follows the remedial purposes that this Court has viewed fee-shifting statutes as serving. *See id.* at 634, 121 S.Ct. at 1856 (Ginsburg, J., dissenting); *see also Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 568, 21 Cal.Rptr.3d 331, 101 P.3d 140, 149 (2004) (concluding that the view of the *Buckhannon* dissent is consistent with the purposes of the fee-shifting statute at issue, namely, to "prevent worthy claimants from being silenced or stifled because of a lack of legal resources"). With regard to the substantial contribution element of the *Kwalwasser* test, the Townships claim that the EHB improperly placed the burden on the party seeking attorneys' fees to demonstrate a causal relationship between its actions and the result of the litigation. Further, given the timing of Appellants' rescission of the Section 401 Certification and the lack of record evidence demonstrating a reason other than the present suit for such a rescission, the Townships assert that their challenge must have contributed to Appellants' decision to revoke the certification.

Alternatively, the Townships rely upon the general rule that each party is responsible for its own counsel fees absent bad faith or vexatious conduct, *see Lucchino,* 570 Pa. at 282, 809 A.2d at 267, and that the EHB has previously required a demonstration of bad faith or vexatious conduct in Section 307 cases, *see, e.g., Alice Water Protection Association v. Department of Environmental Protection,* 1997 EHB 840, 1997 WL 610299, at *2 (Pa.Envt'l.Hrg.Bd. Sept. 17, 1997). Observing that this Court's decision in *Lucchino* was focused on the fact that the Appellant had clearly acted in bad faith in pursuing his appeal to the EHB, and that such a finding was supported by the record, *see Lucchino,* 570 Pa. at 285, 809 A.2d at 269, the Townships assert that Appellants have also acted in bad faith. Supporting this, the Townships claim, are the facts that Appellants not only utilized an illegal procedure in obtaining the Section 401 Certification in the first instance, but also that

they revoked the certification "for either no reason at all or because their legal position was untenable." *Solebury Twp.*, 863 A.2d at 611. Thus, the Townships argue that the Commonwealth Court was correct to categorize Appellants' conduct as vexatious, as a claim that a fee award is inappropriate when further merits review was intentionally avoided but the Townships achieved their objective is the sort of action that fee-shifting provisions were enacted to deter. *See id.*

As the Townships correctly observe, *Lucchino* did not address the question presently before this Court, namely, whether the *Kwalwasser* criteria may be applied as the general standard for determining the propriety of an award of attorneys' fees under Section 307. *See Lucchino*, 570 Pa. at 286 n. 21, 809 A.2d at 270 n. 21. Significantly, in *Lucchino*, the EHB had applied a bad faith standard pursuant to its decision in *Alice Water* in the process of determining whether fee-shifting was appropriate. *See Lucchino v. Department of Environmental Protection*, 1998 EHB 556, 1998 WL 309105, at *3 (Pa.Envt'l.Hrg.Bd. May 27, 1998). The Commonwealth Court thus focused solely on the issue of bad faith and did not examine the propriety of the fee award in the context of the *Kwalwasser* test. *See Lucchino v. Department of Environmental Protection*, 744 A.2d 352, 353–54 (Pa.Cmwlth.2000). Because the finding of bad faith conduct that gave rise to the award of counsel fees in *Lucchino* was clearly supported by the record, as the Townships note, it was unnecessary for this Court to examine the application of the *Kwalwasser* test. *See Lucchino*, 570 Pa. at 285–86, 809 A.2d at 269–70.

▬ The Townships are also correct that Section 307 provides the EHB with broad discretion to award attorneys' fees in appropriate proceedings. Indeed, the plain language of Section 307 does not specify on what basis petitions for counsel fees may be granted or denied, nor does that statute mandate that any such standards be created. *See* 35 P.S. § 691.307(b). However, we agree with Appellants that it is within the scope of the EHB's prerogative to channel its discretion in awarding attorneys' fees based upon considerations such as the *Kwalwasser* criteria when there has been

no finding of bad faith or vexatious conduct. Notably, in approving the EHB's criteria in *Kwalwasser* itself, the Commonwealth Court relied on the broad discretion granted to the EHB by Section 307. *See Kwalwasser*, 131 Pa.Cmwlth. at 81–82, 569 A.2d at 424. Further, in a related context, the Legislature has provided for fee-shifting pursuant to requirements similar to the *Kwalwasser* test, which are also based upon federal standards. *See* 27 Pa.C.S. § 7708(a), (c) (concerning fee-shifting in coal mining proceedings). Similarly, it is appropriate to analogize Pennsylvania statutes to federal enactments and regulations when considering the goal to improve water quality, as both legal systems seek to achieve this objective in a coordinated fashion. *See PUD No. 1 of Jefferson County*, 511 U.S. at 704, 114 S.Ct. at 1905 (observing that Section 401 of the Clean Water Act was intended to permit states to participate in the formulation and enforcement of adequate water quality standards); *Arkansas v. Oklahoma*, 503 U.S. 91, 101, 112 S.Ct. 1046, 1054, 117 L.Ed.2d 239 (1992) ("The Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: 'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" quoting 33 U.S.C. § 1251(a)). In furtherance of this aim, various sections of both the federal and Pennsylvania statutes provide for awards of attorneys' fees so as to diminish the deterrent effect of litigation costs on parties seeking to challenge agency actions. *See, e.g.,* 33 U.S.C. §§ 1365(d), 1369(b)(3); 35 P.S. §§ 691.307(b), 691.601(g).

Although the discretion to award attorneys' fees granted to the EHB by Section 307 encompasses its ability to adopt standards by which applications for counsel fees may be decided, such standards cannot be interpreted to eliminate the availability of attorneys' fees to parties that may have incurred legitimate expenses solely on the basis of a restrictive interpretation of a federal statute. Significantly, with regard to the fee-shifting provision of Section 307, federal statutes authorizing the award of fees and costs to "prevailing parties," *see, e.g.,* 42 U.S.C. § 12205, and federal cases interpreting that

term, *see, e.g., Buckhannon,* 532 U.S. at 600, 121 S.Ct. at 1838, are distinguishable because the plain language of Section 307 is not restricted by such terms.[11] *See* 35 P.S. § 691.307(b). Indeed, fee-shifting provisions contained within federal and state enactments may not be identical, and, as the Commonwealth Court has recognized, the EHB's reliance on federal standards that have not been incorporated into state statutes can only be supported to the extent that those standards are consistent with Pennsylvania public policy. *See Lucchino,* 570 Pa. at 284, 809 A.2d at 268; *Big B Mining,* 155 Pa.Cmwlth. at 18–19, 624 A.2d at 714–15. Thus, given Pennsylvania's strong policy to justly compensate parties who challenge agency actions by liberally interpreting fee-shifting provisions, *see Lucchino,* 570 Pa. at 285, 809 A.2d at 269, we agree with the Townships that the EHB's narrow application of the *Kwalwasser* criteria in the present matter was erroneous.

More specifically, the broad grant of discretion to the EHB in awarding attorneys' fees under Section 307 renders Appellants' argument that a formal judgment is necessary to a finding that a party has prevailed with some degree of success on the merits untenable. Instead, we agree with the Commonwealth Court that the practical relief sought by the Townships should be considered when characterizing them as prevailing parties for purposes of the *Kwalwasser* test. *Accord Buckhannon,* 532 U.S. at 633, 121 S.Ct. at 1856 (Ginsburg, J., dissenting) ("[W]here the ultimate goal is not an arbiter's approval, but a favorable alteration of actual circumstances, a formal declaration is not essential."). In addition, the EHB's exclusive focus on the dismissal of the case as moot, without conducting a hearing or making further factual

11. In this regard, one commentator has concluded that *Buckhannon's* limited definition of "prevailing party" does not apply to the fee-shifting provision of the Clean Water Act due to the broader language of that statute. *See* Jason Douglas Klein, *Attorney's Fees and the Clean Water Act After Buckhannon,* 9 Hastings W.-N.W. J. Envtl. L. & Pol'y 109, 116 (2003); 33 U.S.C. § 1365(d) ("The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to *any prevailing or substantially prevailing party,* whenever the court determines such award is appropriate." (emphasis added)).

findings and legal conclusions, does not justify its holding that the Townships did not achieve some degree of success on the merits and did not make a substantial contribution to the full and final determination of the issues.

 Finally, as *Lucchino* makes clear, the EHB may, in its discretion, award attorneys' fees under Section 307 solely on the basis of a finding of bad faith or vexatious conduct, which is supported by the record, without reference to the *Kwalwasser* criteria. *See Lucchino,* 570 Pa. at 286, 809 A.2d at 269–70. In this regard, however, we agree with Appellants that the Commonwealth Court erred by characterizing Appellants' conduct as vexatious on the undeveloped record before it. Moreover, the Commonwealth Court's determination that the revocation of the Section 401 Certification was "completely unexplained" and its rejection of Appellants' arguments concerning a reason for that rescission, namely, a change in government administration, *see Solebury Twp.,* 863 A.2d at 610, present questions that would have been more appropriately addressed, in the first instance, by the EHB. Absent agency findings of fact and conclusions of law on these issues, and particularly where no hearing was held before the EHB, the Commonwealth Court's conclusions resemble pure fact-finding from an appellate perspective, an approach to appellate review that is disfavored by this Court. *See, e.g.,* *O'Rourke v. Commonwealth,* 566 Pa. 161, 170 n. 6, 778 A.2d 1194, 1199 n. 6 (2001) ("[I]t is not the function of the appellate court to find facts, but to determine whether there is evidence in the record to justify the trial court's findings.") (citing *Allegheny County v. Monzo,* 509 Pa. 26, 35, 500 A.2d 1096, 1101 (1985)).

Since we conclude that the EHB's application of the *Kwalwasser* criteria in the present matter was too narrow in view of the broad language of Section 307 and the public policy favoring liberal construction of fee-shifting provisions, we cannot determine the propriety of the EHB's denial of the Townships' motion for attorneys' fees under Section 307 on the present record. Accordingly, the order of the Commonwealth

Court is vacated, and the matter is remanded to the EHB for further proceedings consistent with the above.

Jurisdiction is relinquished.

Former Justice NIGRO did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY and Justices CASTILLE and BAER join the opinion.

Justice EAKIN files a concurring and dissenting opinion.

### CONCURRING AND DISSENTING OPINION

Justice EAKIN.

I respectfully dissent from Part II of the Majority Opinion.

In Part II, the majority concludes "the EHB's application of the *Kwalwasser* criteria ... was too narrow in view of the broad language of [§ ]307 and the public policy favoring liberal construction of fee-shifting provisions...." Majority, at 1005. The majority does not reject the *Kwalwasser* test for a new one, but concludes "it is within the scope of the EHB's prerogative to channel its discretion in awarding attorneys' fees based upon considerations such as the *Kwalwasser* criteria when there has been no finding of bad faith or vexatious conduct." *Id.*, at 1003. Under that conclusion, tribunals and courts may rely on *Kwalwasser* criteria, but appear authorized to use other unspecified criteria. This could lead to the application of different criteria to each case, which could lead to inconsistent case law and results.

Regarding the prevailing party prong of the *Kwalwasser* test, the majority, citing a dissenting opinion, states it agrees with the Commonwealth Court "that the practical relief sought by the Townships should be considered when characterizing them as prevailing parties for purposes of the *Kwalwasser* test. *Accord Buckhannon Bd. and Care Home, Inc. v. West*

*Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 633, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (Ginsburg, J., dissenting)...." *Id.,* at 1004–1005. The EHB's conclusion the townships were not prevailing parties was in accordance with the majority opinion in *Buckhannon:*

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

*Buckhannon,* at 600, 121 S.Ct. 1835. While the prevailing party prong under *Kwalwasser* is part of a court-made test as opposed to statutory text examined in *Buckhannon,* this appears to be a distinction without a difference, as the wording of the issue above mirrors the issue and circumstances here. While the Commonwealth Court noted the Costs Act defines "prevailing party" in a way that could lead to a favorable result for the townships, *see* 71 P.S. § 2032, the action here was for attorney's fees under § 307. The townships brought a separate action for attorney's fees under the Costs Act.

Ultimately, I cannot conclude the EHB erred when it applied the *Kwalwasser* criteria and implicitly followed an interpretation of the prevailing party prong in accordance with *Buckhannon.* I would reverse the Commonwealth Court's decision and reinstate the EHB's decision. This would leave the *Kwalwasser* test in place and the prevailing party prong would track *Buckhannon's* holding. In all other respects, I join the majority.