**[J-13A-2022 and J-13B-2022] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| CLEAN AIR COUNCIL, THE DELAWARE RIVERKEEPER NETWORK, AND MOUNTAIN WATERSHED ASSOCIATION, INC., | : | No. 73 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the Commonwealth Court Order dated February 16, 2021 at No. 309 CD 2019 Affirming the Order of the Environmental Hearing Board dated February 19, 2019 at No. 2017-009-L. |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | ARGUED:  March 10, 2022 |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND SUNOCO PIPELINE, L.P., | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellees | : | |
| STEPHEN AND ELLEN GERHART | : | No. 74 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the Commonwealth Court dated February 16, 2021 at No. 107 CD 2020 Affirming the Order of the Environmental Hearing Board dated January 7, 2020 at No. 2017-013-L |
| v. | : | |
| | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND SUNOCO PIPELINE, L.P. | : | |
| | : | |
| | : | ARGUED:  March 10, 2022 |
| | : | |
| | : | |
| APPEAL OF:  COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION | : | |
| | : | |
| | : | |
| | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                        **DECIDED:  February 22, 2023**

The plain language of the fee-shifting provision within the Clean Streams Law ("CSL") grants the Environmental Hearing Board ("Board") full discretion in deciding whether to award attorney's fees. Specifically, in these cases, the Board adopted a standard by which fees could only be obtained from a private party if there was a showing of bad faith. As this Court has held, "the discretion to award attorneys' fees granted to the [Board] by Section 307 encompasses its ability to adopt standards by which application for counsel fees may be decided[.]" *Solebury Twp. V. DEP*, 928 A.2d 990, 1004 (Pa. 2007). Because the Board acted within its discretion in adopting a bad faith standard for deciding when to award attorney's fees from a private party, I dissent.

The fee-shifting provision of the CSL states:

**35 P.S. § 691.307. Industrial waste discharges**

(b) . . . . The Environmental Hearing Board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings pursuant to this act. . . .

The language of this statute is unambiguous. The legislature afforded full discretion to the Board to determine when to order the payment of attorney's fees. Therefore, it is within the Board's discretion to decide what standard, if any, it will use in making such a determination. This Court has recognized as much in the past, *See Solebury*, *supra*, and the majority recognizes this broad discretionary authority today. *See* Maj. Op. at 43 ("We also refrain from taking a position on whether any particular standard we have not had occasion to consider in this case (for want of its application below) is prescribed or preferable to another. That is a matter for the Board's discretion.").

Nevertheless, under the guise of interpreting the word "discretion," the majority imbues restrictions upon the Board's facially unrestricted discretion. This goes against the fundamental dictates of statutory interpretation. "The plain language of a statute is the best indication of the General Assembly's intent, and where the statutory language is

clear and unambiguous, we must give effect to the plain language thereof." *Philadelphia Gas Works v. Pennsylvania Public Utility Commission*, 249 A.3d 963, 970 (Pa. 2021). Additionally, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). The majority holds: "[H]owever the Board approaches fee applications, it must focus upon why the CSL's fee-shifting provision exists. The General Assembly, by and through its broad grant of discretion to the Board, has strongly implied that it expects the Board to award fees against any party without fear or favor." Maj. Op. at 45. By focusing on the perceived purpose of the fee-shifting provision and extrapolating legislative implications, the majority's decision is clearly guided by its interpretation of the "spirit" of the CSL rather than its plain text.

The legislature unambiguously afforded broad, unrestricted discretion to the Board. If the legislature intended to qualify that discretion, it could have done so. Yet, through cyclical reasoning, the majority concludes that it is the very breadth of the Board's discretion that prevents the Board from adopting its chosen standard here. Maj. Op. at 43 (deeming the Board's bad faith standard "incompatible with the legislature's intent as reflected in the CSL's broadly worded fee-shifting provision."). I cannot agree. The plain language of Section 307 does not impose any restrictions upon the Board's discretion, and this Court cannot interpret such restrictions "under the pretext of pursuing [the statute's] spirit." 1 Pa.C.S. § 1921(b).

The majority suggests that my position "removes Section 307 fee-shifting from the CSL's context, including its statutory Declaration of Policy." Maj. Op. at 46, n. 111. It does not. The Declaration of Policy "requires a comprehensive program of watershed management and control." 35 P.S. §691.4(5). Given the CSL's "compressive" requirements, it is entirely consistent for the Legislature to grant broad discretion to the

Board, acting as the entity with the most practical experience and expertise in handling claims brought under this statute. Therefore, it is in light of the overarching complexity and purpose of the CSL that I believe the plain language of Section 307 reflects the Legislature's intent to impose no statutory restrictions upon the Board's discretion, not in spite of it.

I also reach this conclusion recognizing that "Pennsylvania courts have construed these statutory sections liberally 'to justly compensate parties who have been obliged to incur necessary expenses in prosecuting lawful claims or in defending against unjust or unlawful ones.'" *Lucchino v. Commonwealth*, 809 A.2d 264, 269 (Pa. 2002) (quoting *Tunison v. Commonwealth*, 31 A.2d 521, 523 (Pa. 1943)). The Board's bad faith standard does not run counter to this sentiment because it provides an avenue for parties to be justly compensated. This is particularly so given that the bad faith standard does not preclude parties from seeking fees from the Department and was only applied here given the unusual circumstance of private parties seeking fees from each other.[1] To that end, this Court's jurisprudence in this realm has made effort to confine those decisions to their facts. And so, today's decision should be confined to assessing the Board's application of the bad faith standard in the context of the facts of this case, rather than fabricating a hypothetical situation of the Board "eliminating fee recovery entirely." Maj. Op. at 46, n.

---

[1] The majority suggests that parties rarely seek fees from a permittee because the Board has never awarded fees against a permittee. Maj. Op. at 37, n. 99. However, the Board cannot award fees that are not sought. Therefore, it is the infrequency of the situation that yields the scarce result, not the other way around. The Board even noted the rarity of these circumstances: "Rather, Appellants and Sunoco are seeking fees from each other, a less common situation. And although fees are occasionally sought from unsuccessful appellants in third-party permit appeals, it is rarer for fees to be sought from a permittee." *Clean Air Council* Bd. Op. & Order at 7. The Board also emphasized that "[f]or purposes of the instant appeal, no other credible, workable alternative to the bad faith standard has been proposed." *Id* at 9.

111.[2]  My view on the Board's facially broad discretion is not without limitations.  The Board's discretion is limited by court review for an abuse of that discretion.  Should the Board eliminate fee recovery entirely as the majority hyperbolizes, then a reviewing court will assess whether that decision constitutes an abuse of discretion.  But that is not today's case.  Thus, given the clear and unambiguous nature of this statute, I would conclude the present issue before this Court is simply whether the Board abused its discretion in utilizing a bad faith standard when deciding whether to award fees from a private party.

Turning to review of the Board's exercise of discretion here, I would find that the Board did not abuse its discretion.  As discussed above, this Court has recognized that "Section 307 provides the [Board] with broad discretion to award attorneys' fees in appropriate proceedings.  Indeed, the plain language of Section 307 does not specify on what basis for counsel fees may be granted or denied, nor does that statute mandate that such standards be created." *Solebury*, 928 A.2d at 1003.[3]  In light of that broad discretion, it cannot be overlooked that the majority's decision today represents a significant deviation from this Court's jurisprudence, which has never prohibited the Board from utilizing a particular standard – including the bad faith standard.  *See*, *Solebury*, *supra* (reversing the Board based on a misapplication of the standard, but not rejecting the standard); *Lucchino v. Commonwealth*, 809 A.2d 264, 288 (Pa. 2002) (affirming the application of the bad-faith standard in awarding fees: "The [Board] and the Commonwealth Court correctly determined that Lucchino initiated this litigation in bad faith and, thus, the EHB did not abuse its discretion by awarding Luzerne costs and

---

[2] Certainly the bad faith standard does not eliminate fee recovery, as this Court affirmed the award of fees based on a party's bad faith in *Lucchino*.

[3] The Court went on to note that it was "within the scope of the [Board's] prerogative to channel its discretion . . . based upon considerations such as the *Kwalwasser* criteria." *Solebury*, 928 A.2d at 1003.  However, unlike the majority's disposition here, that language in no way mandated that the Board utilize or avoid a particular standard.

counsel fees."). Even in *Solebury*, the Court did not reverse the Board's decision based upon the standard it chose – the Board clearly had discretion to utilize a standard it saw fit. Instead, the *Solebury* Court reversed based on the Board's *misapplication* of the chosen standard:

> Although the discretion to award attorneys' fees granted to the [Board] by Section 307 encompasses its ability to adopt standards by which application for counsel fees may be decided, such standards cannot be *interpreted* to eliminate the availability of attorneys' fees to parties that may have incurred legitimate expenses *solely on the basis of a restrictive interpretation of a federal statute*. . . . the [Board's] reliance on federal standards that have not been incorporated into state statutes can only be supported to the extent that those standards are consistent with Pennsylvania public policy. Thus, . . . the [Board's] narrow *application* of the *Kwalwasser* criteria in the present matter was erroneous.

*Solebury*, 928 A.2d at 1004 (emphasis added). Here, unlike in *Solebury*, the Board did not deny fees based on any misapplication of law. Instead, the Board adopted the bad faith standard – as it was fully in its discretion to do – and applied that standard in a straightforward manner to the case before it. In fact, when explaining its reasoning for using the bad faith standard, the Board did not rely on inapplicable federal law as it did in *Solebury* but referenced comparable Pennsylvania statutes concerning coal mining fees, which only allow a permittee to recover from a private party if they can establish bad faith. *Clean Air Council* Bd. Op. & Order at 27 (citing 27 Pa.C.S. § 7708).[4]

---

[4] It should be noted that the coal mining fee-shifting statute also subjects different parties to different standards. 27 Pa.C.S. § 7708(c)(1)-(4). That statute is more restrictive than the broad discretion afforded to the Board under Section 307. Thus, while the Board could subject all parties to the same standard under Section 307, I see no issue with the Board choosing to apply a different standard when attorney's fees are sought from private parties rather than from DEP, so long as the Board's decision does not amount to an abuse of discretion. Here, the Board explained that the bad faith standard was appropriate in this context so as not to have a chilling effect upon either permittees or objectors. Given the breadth of discretion afforded to the Board by Section 307, I do not find it problematic, let alone an abuse of discretion, for the Board to adopt a general rule that counsel's fees will only be obtainable from a private party upon a demonstration of bad faith. *See*, *Lucchino v. Commonwealth*, 809 A.2d 264, 282 (Pa. 2002) ("The general
(continued…)

Ultimately, I believe that the majority misapplies our well-settled principles of statutory interpretation. In doing so, the majority usurps the Board's discretion to adopt a standard by placing court-imposed restrictions on the Board's discretion that do not exist in the plain language of the fee-shifting statute. Here, the majority recognizes the Board's discretion to adopt a standard yet creates a rule that outright bars any standard that "is incompatible with the CSL's remedial intent." Maj. Op. at 43. With this rule, the Board's adoption of a standard is no longer guided by its own discretion and expertise in this field, but instead by whether the standard is compatible with the CSL – a determination that inherently will be decided by this Court as the final interpreter of statutes. Thus, although the majority superficially gives deference to the Board's discretion, today's rule makes meaningless that discretion by necessitating judicial interpretation to determine whether the chosen standard is compatible with the statute.

In today's cases, the Commonwealth Court was tasked with considering the propriety of the Board's discretionary decision not to award counsel's fees between private parties absent a finding of bad faith.[5] The Commonwealth Court's appellate review, therefore, was limited to determining whether there was an abuse of that discretion. The court could not "substitute [its] judgment for that of the [Board]" and a "disagreement with the [Board's] reasoning or result [was] not sufficient ground to overturn the [Board's] decision." *Clean Air Council v. DEP*, 245 A.3d 1207, 1216 (Pa. Cmwlth. 2021) (*en banc*) (citing, *Sierra Club v. Department of Environment Protection*, 211 A.3d 919 (Pa. Cmwlth. 2019)). Nor should the majority now do the same. I therefore would affirm the Commonwealth Court, which correctly concluded that "it was entirely

___

rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct.").

[5] As the majority notes, the Commonwealth Court disposed of *Gerhard v. DEP* briefly by reference to *Clean Air Council*.

within the [Board's] discretion, and eminently appropriate, to apply the instant bad faith standard in deciding whether or not to impose costs and fees upon a private party permittee." *Id*., at 1218. For these reasons, I dissent.