IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Environmental :
Protection, :
:
:
Petitioner :
:
v. : No. 107 C.D. 2020
: Submitted: October 15, 2020
Stephen and Ellen Gerhart and :
Sunoco Pipeline, L.P., :
:
Respondents :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  February 16, 2021


The Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) petitions for review of the order of the Environmental Hearing Board (EHB) ordering DEP to pay Stephen and Ellen Gerhart (Landowners) $13,135.77 in costs and attorney's fees pursuant to Section 307(b) of The Clean Streams Law.[2]  We affirm.

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

[2] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §691.307(b).  Section 307(b) states, in relevant part: "[EHB], upon the request of any party, may in its discretion order the **(Footnote continued on next page…)**

On February 13, 2017, DEP granted two permits to Sunoco Pipeline, L.P. (Sunoco), authorizing the installation of natural gas liquids pipelines across Landowners' property in Union Township, Huntingdon County.[3] EHB 1/27/20

---

**(continued…)**

payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings pursuant to [The Clean Streams Law]."

[3] One of the permits, relating to erosion and sediment control, is referred to as a "Chapter 102" permit, which was issued under the provisions of Chapter 102 of DEP's regulations, 25 Pa. Code §§102.1-102.51. *See, e.g.*, *Becker v. Department of Environmental Protection* (Pa. Cmwlth., No. 560 C.D. 2017, filed December 1, 2017), slip op. at 15 ("Under The Clean Streams Law and its regulations promulgated at Chapter 102 of Title 25 of the Pennsylvania Code, [DEP] has the authority to issue orders to prevent the pollution of waters of the Commonwealth, which are defined very broadly to include . . . 'any and all rivers, streams . . . or parts thereof.' Section 1 of The Clean Streams Law, 35 P.S. §691.1[.]"); *Delaware County Community College v. Fox*, 342 A.2d 468, 479-80 (Pa. Cmwlth. 1975) (holding that DEP's regulations in Chapter 102 of the Pennsylvania Code, relating to erosion and sedimentation control, provide protection against secondary polluting effects should they become imminent).

The other permit, relating to water obstruction and encroachment, is referred to as a "Chapter 105" permit, was issued under the provisions of Chapter 105 of DEP's regulations, 25 Pa. Code §§105.1-105.64. As we have previously explained:

> The [Dam Safety and Encroachments Act (DSEA), Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§693.1-693.27], similar to The Clean Streams Law, provides [DEP's] statutory authority for Chapter 105 regulations governing water obstructions and encroachments, the scope of which is broadly delineated to include "[a]ll water obstructions and encroachments . . . located in, along, across or projecting into **any watercourse**, floodway or body of water, whether temporary or permanent." Section 4 of the DSEA, 32 P.S. §693.4 (emphasis added).

*Becker*, slip op. at 16. *See also* Section 105.15(b) of DEP's regulations, 25 Pa. Code §105.15(b) ("For structures or activities where water quality certification is required under section 401 of the Clean Water Act (33 U.S.C.A. §1341), an applicant . . . shall prepare and submit to [DEP] for review, an environmental assessment containing the information required by subsection (a) for every dam, water obstruction or encroachment located in, along, across or projecting into the **(Footnote continued on next page…)**

Opinion (EHB Op.) at 1. On February 23, 2017, Landowners appealed DEP's issuance of the two permits. By a September 25, 2019 Adjudication and Order, EHB sustained Landowners' appeal of the permits in part. *Id.* EHB held that a wetland on the property denominated as Wetland L24/25 was a palustrine forested (PFO) wetland, which had been improperly classified as a palustrine emergent (PEM) wetland,[4] and that DEP erred in approving Sunoco's restoration plan that was based on the flawed classification.[5] *Id.* at 1-2.[6]

---

**(continued…)**

regulated water of this Commonwealth."); *Solebury Township v. Department of Environmental Protection*, 928 A.2d 990, 999 (Pa. 2007) ("[W]e conclude that, at least under the circumstances presented in this case, challenges to The Clean Streams Law aspects of the issuance of Section 401 Certifications are 'proceedings pursuant to this act' for purposes of the fee-shifting provisions of Section 307 [of The Clean Streams Law].").

[4] Section 105.451(b) of DEP's regulations states that "[t]he use of some delineation method is necessary in order to administer, implement, enforce and determine compliance with . . . The Clean Streams Law[.]" 25 Pa. Code §105.451(b). Accordingly, Section 105.451(c) provides, in relevant part:

> [DEP] adopts and incorporates by reference the 1987 *Corps of Engineers Wetland Delineation Manual (Technical Report Y-87-1)* along with the guidance provided by the United States Army Corps of Engineers, Major General Arthur E. Williams' memorandum dated 6 March 1992, *Clarification and Interpretation of the 1987 Manual* and any subsequent changes as the methodology to be used for identifying and delineating wetlands in this Commonwealth.

25 Pa. Code §105.451(c).

In turn, a federal appellate court has explained:

> [T]he [environmental assessment (EA)] clearly explains that the "field delineations of wetlands" in Pennsylvania were performed according to the U.S. Army Corps of Engineers' "Wetlands

**(Footnote continued on next page…)**

3

(continued…)

> Delineation Manual (COE, 1987)," JA 202, and that delineated wetlands "were classified as described in Cowardin, *et al.*, (1979)," JA 203. The EA thus classifies the wetlands as either Palustrine Forested, Palustrine Scrub-Shrub, or Palustrine Emergent wetlands. These three Palustrine wetland types are consistent with the Cowardin classification system referenced in the Corps' delineation manual. *See* U.S. ARMY CORPS OF ENG'RS, WETLANDS DELINEATION MANUAL 3 (1987); LEWIS M. COWARDIN, ET AL., CLASSIFICATION OF WETLANDS AND DEEPWATER HABITATS OF THE UNITED STATES 10-13 (1979).

*Delaware Riverkeeper Network v. Federal Energy Regulatory Commission*, 857 F.3d 388, 400 (D.C. Cir. 2017). *See also* Section 102.14(c)(2) of DEP's regulations, 25 Pa. Code §102.14(c)(2) (providing that "[w]etlands located in the riparian buffer shall be protected and maintained consistent with Chapter 105 (relating to dam safety and waterway management));" Section 105.17 of DEP's regulations, 25 Pa. Code §105.17 (denominating wetlands as either "Exceptional value wetlands" or "Other wetlands," based on the criteria outlined therein).

[5] Additionally, Landowners also asserted as error that "not all of the wetlands on their property were properly delineated," and that "Sunoco and [DEP] failed to identify all of the streams on [their] property, and therefore, [DEP] failed to require sufficient streamside buffer restoration." EHB Op. at 2. However, EHB noted that "[t]hose two issues played a relatively small part in the case." *Id.*

[6] With respect to the error in classification, EHB explained:

> The pipeline crossed Wetland L24/25 at two places. The portion of the wetland located within the pipeline's permanent right of way totaled 0.066 acres. There was never any question that the wetland would be restored. Rather, the issue was what vegetation was to be planted during restoration, which depended upon how the wetland was classified before being impacted by the installation of the pipeline. [Landowners] argued that there were two overlapping bases for classifying the wetland as a PFO wetland. First, they argued that there were enough trees *in* the wetland to satisfy the definition of a PFO wetland. Second, they argued that a wetland can be classified as "forested" by way of overhanging tree cover

**(Footnote continued on next page…)**

4

Landowners then filed an application for costs and attorney's fees from DEP and Sunoco. Landowners sought $265,976.27, comprised of $50,000.00 in attorney's fees and costs, and the remainder in expert fees. EHB Op. at 3.

EHB explained that, with respect to Sunoco's liability, "a permittee such as Sunoco in a third-party appeal will ordinarily not be required to reimburse third-party appellants such as [Landowners] for fees and costs unless the permittee engaged in dilatory, obdurate, vexatious, or bad faith conduct." EHB Op. at 3-4.[7]

---

**(continued…)**

> originating from trees growing outside the delineated boundaries of the wetland. [DEP] and Sunoco disputed both points.
>
> We accepted [Landowners'] argument that Wetland L24/25 should have been classified as a PFO wetland. We found that there had been hydrophytic trees of sufficient size and amount to provide at least 30-percent areal cover rooted in and growing out of the wetland within its delineated boundaries before Sunoco clear-cut the pipeline corridor, thereby satisfying the definition of a PFO wetland. We held that [Landowners] carried their burden of proving that [DEP] erred by approving a defective restoration plan for the wetland and we ordered that the wetland be restored as a PFO wetland. As to [Landowners'] overhanging branches theory, we found that the issue was "somewhat of a distraction from the more basic issue of whether there were in fact trees growing within the boundaries of Wetland L24/25 on [Landowners'] property." ([EHB 9/25/19 Opinion at] 19.) We did not address the overhanging branches theory any further.

EHB Op. at 2-3 (emphasis in original and footnote omitted).

[7] As the Pennsylvania Supreme Court has explained:

> Where, as here, the record supports a tribunal's finding of fact that the conduct of the party was dilatory, obdurate, vexatious, or in bad faith, this Court will not disturb an award of counsel fees in the absence of an abuse of discretion. *Township of South Strabane v.*

**(Footnote continued on next page…)**

EHB found that Landowners "have not alleged that Sunoco engaged in any such conduct," and although DEP asserted "errors" in Sunoco's wetland data sheets, "[i]t also has not alleged that Sunoco has engaged in fraud or gross negligence in the preparation of its permit application." *Id.* at 4. EHB concluded that it "detected nothing approaching bad faith on the part of Sunoco in either its permit application or its litigation of this case." *Id.* As a result, EHB held that "Sunoco is not liable for reimbursing [Landowners] for any of their fees or costs." *Id.*

With respect to DEP's liability, EHB applied the "catalyst test,[8]" examining whether: the applicant for fees and costs was the prevailing party;

**(continued…)**

> *Piecknick*, [686 A.2d 1297 (Pa. 1996) (a]warding counsel fees appropriate if record supports finding of fact that the conduct of the party was dilatory, obdurate, or vexatious). We find no abuse of discretion in this instance and an award of counsel fees is appropriate. We do not reach this decision lightly for, as Lucchino reminds us, any grant of attorney's fees against an individual litigant in a suit against his government, has a potential "chilling effect" on the willingness of the ordinary citizen to pursue resolution of his disputes in the courts. However, recognizing that we must strike a delicate balance, it is equally important that this phrase not be employed to defeat the protections against frivolous suits afforded to a defendant.

*Lucchino v. Department of Environmental Protection*, 809 A.2d 264, 270 (Pa. 2002) (footnotes omitted).

> [8] As this Court has stated:

> > Under the catalyst test, the applicant must demonstrate the following to be considered eligible for an award under Section 307(b) of The Clean Streams Law:

> > > (1) that the opposing party provided some of the benefits that the fee-requesting party sought in the

**(Footnote continued on next page…)**

6

achieved some degree of success on the merits; and made a substantial contribution to the determination of the issues. EHB Op. at 5 (citing *Kwalwasser v. Department of Environmental Resources*, 1988 EHB 1308 (December 22, 1988), 1988 WL 161059, *aff'd*, 569 A.2d 422, 424 (Pa. Cmwlth. 1990)). EHB held:

> Having concluded that [Landowners'] appeal was a proceeding pursuant to The Clean Streams Law, our next inquiry is whether [Landowners] have satisfied the threshold criteria for an award. Actually, neither [DEP] nor Sunoco dispute that [Landowners] meet these threshold criteria. [Landowners] obviously obtained a final order—the [EHB 9/25/19] Adjudication and Order. They prevailed on their claim that the wetlands on their property were improperly classified as PEM wetlands instead of PFO wetlands, and that the site needs to be restored accordingly. They achieved this success on the merits, and their efforts were the exclusive contribution leading to this result. The threshold criteria have been met.

EHB Op. at 8. As a result, EHB assessed $13,135.77 in costs and attorney's fees[9] against DEP. DEP then filed the instant petition for review.[10]

---

**(continued…)**

> underlying suit, (2) that the suit stated a genuine claim, and (3) that the suit was a substantial or significant reason why the opposing party, voluntarily or otherwise, provided the benefit or partial benefit that the fee-requesting party sought in the underlying suit.

*Sierra Club v. Department of Environmental Protection*, 211 A.3d 919, 922 (Pa. Cmwlth. 2019) (citations omitted).

[9] DEP does not contest EHB's calculation of the costs and attorney's fees awarded.

[10] As this Court has explained:

**(Footnote continued on next page…)**

As stated by DEP: "This appeal raises a narrow issue, *i.e.*, what is the proper standard to apply when considering whether a permittee should be liable for attorney's fees and costs in a third-party appeal under Section 307(b) of The Clean Streams Law, 35 P.S. §691.307(b)?" Brief of Petitioner at 15. DEP contends that EHB erred in applying the "bad faith" standard to Sunoco, while applying the "catalyst test" in determining DEP's liability. DEP also notes that this identical issue was considered by this Court in *Clean Air Council v. Department of Environmental Protection*, ___ A.3d ___ (Pa. Cmwlth., Nos. 309 C.D. 2019, 313 C.D. 2019, filed February 16, 2021) (*Clean Air Council*). *Id.* We agree with DEP that our disposition of this issue in *Clean Air Council* controls the disposition of this appeal.[11]

---

**(continued…)**

> Our review of EHB determinations under Section 307(b) of The Clean Streams Law is limited to determining whether the EHB abused its discretion. *Solebury Township*[, 928 A.2d at 997 n.8]. In *Kwalwasser*[, 569 A.2d at 424], we noted that our disagreement with the EHB's reasoning or result is not sufficient ground to overturn the EHB's decision. We may not substitute our judgment for that of the EHB. [*Id.*] Rather, "[a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Luzerne County Children & Youth Services v. Department of Human Services*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019).

*Sierra Club*, 211 A.3d at 924-25. Importantly, "[t]his broad discretion includes the authority to adopt standards by which the EHB will evaluate applications for costs and fees." *Id.* at 926 (citing *Solebury Township*, 928 A.2d at 1004).

[11] Landowners' outstanding Application for Relief Regarding Payment is denied. *See, e.g.*, Pa. R.A.P. 1736(a)(1), (b) ("No security shall be required of . . . [t]he Commonwealth or any officer thereof, acting in his official capacity. . . . Unless otherwise ordered . . . the taking of **(Footnote continued on next page…)**

Accordingly, we affirm EHB's order on the basis of our opinion in *Clean Air Council*.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

_____
**(continued…)**

an appeal by any party . . . shall operate as a *supersedeas* in favor of such party, which *supersedeas* shall continue through any proceedings in the United States Supreme Court.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,   :
Department of Environmental   :
Protection,   :
   :
       Petitioner   :
   :
      v.   : No.  107 C.D. 2020
   :
Stephen and Ellen Gerhart and   :
Sunoco Pipeline, L.P.,   :
   :
      Respondents   :

# **O R D E R**

AND NOW, this 16th day of February, 2021, the order of the Environmental Hearing Board dated January 7, 2020, is AFFIRMED. Respondents Stephen and Ellen Gerhart's Application for Relief Regarding Payment is DENIED.

_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,     :
Department of Environmental     :
Protection,     :
                  Petitioner     :
    :
         v.                     :    No. 107 C.D. 2020
    :    Submitted: October 15, 2020
Stephen and Ellen Gerhart and     :
Sunoco Pipeline, L.P.,     :
            Respondents     :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*


**CONCURRING OPINION**
**BY JUDGE BROBSON**              **FILED: February 16, 2021**


I concur for the reasons set forth in my concurring opinion filed in *Clean Air Council v. Department of Environmental Protection*, ___ A.3d ___ (Pa. Cmwlth., Nos. 309 C.D. 2019, 313 C.D. 2019, filed February 16, 2021).


                           _____
                           P. KEVIN BROBSON, Judge